RED RIVER VALLEY LAND AND INVESTMENT COMPANY *vs.* JAMES H. SMITH.

Opinion filed January 27th, 1898.

**Vendor and Purchaser—Party in Possession—Notice.**

> The rule of law which declares that a purchaser of real estate in possession of another than his grantor is chargeable with knowledge of all the rights of such party in possession has its exceptions. It does not apply where the possession of such party is entirely consistent with the record title, nor where such party was a former vendor of the land, and remained in possession; and when such party in possession holds a lease of the land, and the purchaser knows of the existence of such lease, he may attribute the possession to such lease.

**Evidence of Notice to Vendee.**

> Certain evidence examined, and *held* to have no tendency to establish actual notice on the part of a vendee of real estate of any outstanding equites in the party in possession.

**Knowledge of Officer of Corporation—When Notice to Corporation.**

> In order to charge a corporation vendee of real estate with knowledge of outstanding equities therein, on the sole ground that its managing officer had such knowledge, it is not sufficient to show simply that such officer obtained such knowledge more than three years before the organization of such corporation. It must at least further appear that such knowledge was present in the mind of such officer at the time of the transaction in which the corporation is sought to be charged.

Appeal from District Court, Cass County; *Pollock,* J.

Action by the Red River Valley Land and Investment Company against James H. Smith. From a judgment entered on a verdict directed for plaintiff, defendant appeals.

Affirmed.

*W. C. Resser,* (*A. B. Wright,* of counsel,) for appellant.

*Ball, Watson & Maclay,* and *Bartlett & Lovell,* for respondent.

BARTHOLOMEW, J. This action was commenced in March, 1897, in justice court. The object was to obtain possession, under the forcible entry and detainer statute, of a section of land in Cass County. The material allegations in the complaint were to the effect that in the spring of 1896 the plaintiff, by written lease, a copy of which was attached to the complaint, leased the said

land to the defendant, the said lease, by its terms, terminating on December 31, 1896, and giving the lessor a right of re-entry; that, after the termination of the lease, due notice to quit and surrender possession was served upon defendant, but that he continued to hold said premises contrary to the terms of his lease, and without the permission of the plaintiff. An answer having been filed setting forth that the title to said land would come in question as a defense to said action, and the proper bond having been filed, the case was transferred to the District Court, under the provisions of § 6671, Rev. Codes. In the District Court an amended answer was filed. It is very prolix, and we will condense its substance. The ownership of plaintiff and the execution of the lease are denied, and it is affirmatively alleged that in 1884 the defendant and his brother purchased said land from a corporation known as the "Amenia & Sharon Land Company," which was then the owner of said land, for the sum of $9,000; that said purchase was evidenced by a written contract between said parties, by the terms of which it was agreed that said purchase price should draw interest at the rate of 7 per cent. payable annually, and that one-tenth of the purchase price should be paid in each year, and, after the payment of a certain amount, a deed was to be given, with a mortgage back for the balance; that, under said contract, the defendant went into possession of the land, and paid the annual interest for 1885 and 1886, but paid no part of the principal in those years, and that in the years 1887, 1888, and 1889, he paid neither principal nor interest; that in the fall of 1889 defendant was also indebted in a large amount to other parties, and on this outside indebtedness he was paying interest at the rate of 12 per cent. per annum; that at said time he entered into a contract with the said Amenia & Sharon Land Company, through its president and general manager, one E. W. Chaffee, by which it was agreed that said land company should loan defendant sufficient money to pay off this outside indebtedness, and also to carry on his farming operations for the succeeding year; upon this loan defendant was to pay interest at the rate

of 7 per cent. per annum, and, as security for the payment of such loan and interest, defendant surrendered his contract for the purchase of said land, and executed a quit-claim deed for the same back to said land company, and took a lease or farm contract from said company, and that this arrangement should continue from year to year until such time as defendant should have entirely repaid the money so loaned to him, with the interest thereon, and, when that was done, that defendant should receive back his original contract for said land; that, by virtue of such agreement, leases or farm contracts, under which defendant farmed said lands, were executed for the years 1891 to 1894, inclusive, by the terms of which defendant was to have one-half or two-thirds of the crop raised by him, but the land company had a lien upon such share for the repayment of such loan. These leases are entirely silent upon the question of the disposition of the share of the crop which should go to the lessor, but, of course, it is defendant's theory that such share was to be applied upon the original contract of purchase, and he so alleges. The answer further alleges that in the spring of 1895 the said Amenia & Sharon Land Company transferred the legal title of said land to one Guernsey, and the lease or farm contract for that year was made with said Guernsey; but it is alleged that Guernsey took the land with full knowledge of defendant's rights therein, and the lease with him was executed for the same purpose and with the same understanding as the prior leases. In 1895 Guernsey transferred the legal title to the plaintiff herein, the Red River Valley Land & Investment Company, and the lease for 1896 was made with plaintiff; but it is alleged that plaintiff took the land with full knowledge of defendant's rights therein, and the contract with it was made for the same purpose as those preceding. There was no prayer to be allowed to pay up under the original contract. There was no prayer for an accounting. All that was asked, in effect, was the dismissal of the action, with costs, which might with equal propriety have been asked under a general denial. But it is evident that the object of the answer was to

show an equitable title in defendant, that entitled him to possession, and thus defeat plaintiff's claim of right to immediate possession. Whether or not these facts might not have been shown under a general denial, we need not stop to discuss.

This case cannot be controlled by those cases in which a tenant is denied the right to dispute his landlord's title. While these leases or contracts are in the usual form, and contain a stipulation on the part of the defendant to quit and surrender possession at the termination of the contract, with a right of re-entry to the other party, and while defendant admits the execution of all those contracts, yet the central thought of the answer is that, while defendant was a tenent in form, he never was such in fact; that, in fact, he was during all of said years the equitable owner of the land, and entitled to possession as such; and that the quit-claim deed and subsequent leases were all parts of an arrangement by which defendant secured the Amenia & Sharon Land Company for money loaned. The answer seeks to bring the case within that principle which permits a conveyance absolute in form to be shown, by parol, to be a security only. Without objection by either party, the case was tried to a jury, and, after the evidence was all in, defendant moved that the questions whether or not the quit-claim deed and subsequent leases were in fact given and received as security be submitted to the jury for its determination. This the court refused, but, on motion of plaintiff, the court proceeded to make findings upon those points, which findings were adverse to defendant. Plaintiff then moved for a directed verdict upon the law issues; whereupon the court stated to the jury that the only issue for them to decide was whether or not plaintiff was entitled to the immediate possession of the land, and instructed them that the plaintiff was so entitled, and directed a verdict accordingly, which was rendered. Exceptions were saved by defendant to all of these rulings.

It is perfectly clear to us, after a full and thorough examination, that no other result would have been proper under the evidence, and we cannot therefore disturb it, unless we find

prejudicial error in the record. It is urged that it was error to refuse to submit all the issues in the case to the jury, and error for the court to make findings in the case, and it is also urged that such findings are not supported by the evidence, but are contrary thereto. We shall not stop to discuss these matters. We shall assume, in the interests of defendant, that the action was a law action, and that there were no "equitable issues," properly so called, and that all the special matters pleaded in the answer might have been shown in evidence under the general denial. We shall also assume that the action of the court amounted to a direction to the jury to find a general verdict for plaintiff. This gives the defendant the advantage of having everything regarded as proven that his evidence has any legal tendency to establish. Defendant, in his answer, pleaded the conveyances to Guernsey and plaintiff; and inasmuch as whatever equities defendant claimed in the land had their basis in a parol agreement between defendant and the manager of the Amenia & Sharon Land Company, which was made in 1889, it was incumbent upon defendant, under his answer, to show that when Guernsey purchased the land, in 1895, he took it with knowledge of defendant's rights; and it was also incumbent upon defendant to show that when plaintiff purchased the land from Guernsey, it took the same with knowledge of defendant's equities. *Anthony* v. *Wheeler*, (Ill. Sup.) 17 Am. St. Rep. 281, and cases in note (s. c. 22 N. E. Rep. 494.) A failure of proof on either point must defeat defendant. If Guernsey took without notice then the title was perfect in him, and he could transfer such perfect title to plaintiff, although plaintiff had full knowledge of defendant's equities. On the other hand, Guernsey may have had full knowledge of such equities, yet, if plaintiff was a good faith purchaser, it took the lands freed from all such claims. Hence it was neccessary for defendant to show that both Guernsey and plaintiff purchased with knowledge. We think he signally failed on both points.

True, the defendant was in actual possession of the land at the time the purchases were made, and it has been reiterated times

without number that where a party purchases real estate in the possession of another, not his vendor, he is chargeable with knowledge of all the rights of such party in possession. We remark, however, that neither in their brief nor in oral argument do learned counsel claim anything in this case by reason of their client's possession; and doubtless counsel were well advised. The rule has its exceptions. Where the possession is consistent with the record title, it is presumed to be under such title, and is not notice of outstanding unrecorded equities. *Smith* v. *Yule*, 31 Cal. 180; *Dutton* v. *McReynolds*, 31 Minn. 66, 16 N. W. Rep. 468; *Townsend* v. *Little*, 109 U. S. 504, 3 Sup. Ct. 357; *Williams* v. *Sprigg*, 6 Ohio St. 585. Again, where a vendor remains in possession after conveyance, such possession is not notice that he claims any rights inconsistent with the conveyance he has made. *Abbott* v. *Gregory*, 39 Mich. 68; *Sprague* v. *White*, 73 Iowa, 670, 35 N. W. Rep. 751; *Eylar* v. *Eylar*, 60 Tex. 315; *Cook* v. *Travis*, 20 N. Y. 400; *Van Keuren* v. *Railroad Co.*, 38 N. J. Law, 165; *Bank* v. *Batty*, 30 N. J. Eq. 126. How stood the record when Guernsey purchased from the Amenia & Sharon Land Company? The fee title was in the grantor, and there were four consecutive contracts of lease of record, wherein defendant acknowledged such title, and covenanted to surrender possession to said land company at the termination of his contract. His possession was entirely consistent with what appeared of record. Moreover, there was on record a deed from defendant to said land company of this same land; thus bringing defendant into the position of a grantor remaining in possession after conveyance. Nor was there any change to defendant's advantage when plaintiff purchased from Guernsey. The record remained the same, with the addition of the contract between Guernsey and defendant. The point has been squarely held that where the party in possession holds a lease, and a purchaser knows of such lease, he can attribute the possession to the lease, and the possession is not constructive notice to him of any outstanding equities. *Leach* v. *Ansbacher*, 55 Pa. St. 85.

But an effort was made at the trial to show actual notice on the part of Guernsey. The transactions between the defendant and Guernsey were conducted on the part of Guernsey through an agent. Guernsey held title to a large amount of land in the vicinity. One Cobb was his general agent, but Cobb employed one Clark to assist him, and it was Clark who first opened the negotiations, with defendant. The defendant testified: "I made this contract in 1895 with Mr. Cobb, as agent for Mr. Guernsey. I found out that Guernsey had a deed of Sec. 29. [That is the section in controversy.] I went to Guernsey or his agent for the purpose of getting a lease of Sec. 29 for 1895, and told the agent what claim I had against it. * * * I told G. Lee Clark I never met Mr. Guernsey. I never told Mr. Cobb that I had a claim against 29. I never talked with Mr. Cobb on the subject at all. The only man I claim to have talked with on that subject, representing Mr. Guernsey, was Clark." It is clear then, that, if Guernsey is to be charged with notice, it must be by reason of what the defendant told Clark. What that was defendant himself nowhere attempts to disclose. He simply gives his conclusion that he stated facts showing that he had some claim on the land, but he gives no facts. Subsequently, however, he called Mr. Clark as a witness in his behalf, and Mr. Clark discloses the facts. He testified: "Under the direction of Mr. Cobb, I went to Smith's, and inquired of him if he wished to rent Sec. 29. He said he did, and, further in that conversation, he stated to me that there was an old matter existing that he had hoped to get settled, and get the title of,—get the contract that he had originally had from Mr. Chaffee back again." That is all so far as the record shows, and it signally fails to disclose that defendant claimed any present existing right or interest, legal or equitable, in or to the land. Under the circumstances, it clearly shows that he made no such claim. Defendant's claim now is that he is, and at all times since the execution of the original contract in 1884 has been, the full equitable owner of said land, and entitled to the entire beneficial use thereof, and that the surrender of the

contract, the execution of the quit-claim deed, and the subsequent contracts of lease, were all for the purpose of enabling him to give the Amenia & Sharon Land Company security for the payment of an outside debt which he owed said company. He had learned that a third party had received a deed for the land from the same party who, on his theory, was eventually bound to deed the land to him. Smith owed this third party nothing. No claim for security for an outstanding indebtedness could exist in favor of Guernsey, because no such indebtedness existed. Guernsey is in no manner connected with the indebtedness owing by Smith to the Amenia & Sharon Land Company; yet, when Guernsey's agent asked Smith if he wanted to lease the land for 1895, he did not repudiate the idea as an owner would have done. He did not state that he was the equitable owner of the land, and entitled to the full beneficial use thereof. On the contrary, he stated that he wanted to lease it, and subsequently entered into a lease, by the terms of which Guernsey had one-third of the crop, and Smith covenanted to quit and surrender possession at the termination of the lease. It is difficult to conceive of a course more inconsistent with any claim of right as owner by Smith. True, Smith stated that there was an old matter which he had hoped to get settled up, and get his contract back. But that was no assertion of any right or legal claim to the land. It was rather a confession to the contrary,—a confession that he had hoped to get some legal claim or right, but had not succeeded. It was certainly no notice to Guernsey of any outstanding equity in Smith.

Guernsey being an innocent purchaser, plaintiff, who succeeded to his rights, would be protected on elementary principles. We need not therefore go further. But we remark that it is clear that plaintiff was also an innocent purchaser. Defendant seeks to charge plaintiff with notice in this manner: He claims that the parol contract with the Amenia & Sharon Land Company, by which he turned the land over as security, was made with E. W. Chaffee, who was an officer in and general manager of said cor-

poration; that the knowledge of E. W. Chaffee was the knowledge of the company. In October, 1892, E. W. Chaffee died; and thereafter his son, H. F. Chaffee, who prior to that time had been a bookkeeper in his father's office, succeeded his father as an officer in and general manager of said company. It is claimed that H. F. Chaffee had knowledge of such parol agreement through his father during the latter's lifetime, or, at any rate, he is chargeable with such knowledge from the time he became an officer of the Amenia & Sharon Land Company. In 1895 the plaintiff corporation was formed, and H. F. Chaffee became an officer in said corporation; and thereupon, defendant claims, the plaintiff corporation became chargeable with knowledge of such parol contract.

We think no case can be found which carries the doctrine of constructive notice to a corporation to any such length. As to this plaintiff corporation, H. F. Chaffee was, at the time he received such knowledge, simply a private citizen. There is nothing in the record to show or intimate that the plaintiff corporation is simply the old corporation under a new name, and we think it has never been held that knowledge received by an individual can be charged to a corporation which was not organized, and of which he did not became a member, until three years thereafter. In this case express notice to plaintiff is not claimed, but only the technical constructive notice arising from the knowledge of its officer. An officer of a corporation is simply an agent of the corporation. On this doctrine of notice, it is stated in Thompson's Commentaries on the law of corporations (§ 5191:) "The most comprehensive rule with reference to this subject which can be stated is that notice communicated to or knowledge acquired by the officers or agents of corporations, when acting in their official capacity, or within the scope of their agency, becomes notice to or knowledge of the corporation for all judicial purposes." This announces the strict rule as to the time when the knowledge must be acquired or the notice received. It has direct authority to support it. *Hood* v. *Fahnestock*, 8 Watts, 489;

*Houseman* v. *Association*, 81 Pa. St. 256; *Congar* v. *Railway Co.*, 24 Wis. 124; Jones, Mortg. § 584. In subsequent sections of his work, Judge Thompson is inclined to modify this strict rule, and later authorities are in that direction. They hold that where an officer of a corporation, or other agent, is engaged in a tranaction for his principal, and has at the time, present in his mind, a knowledge of certain facts of vital importance to his principal, and bearing directly upon the transactions then before him, and has no selfish interest that prompts him to withhold such knowledge from his principal, and where such knowledge was not received in any confidential relation, the duty of the officer or agent to communicate such knowledge to his principal is so strong that the law presumes it to have been done. If such knowledge was received while acting in an official. capacity as such officer, or within the scope of his agency, then the law requires nothing more to raise the presumption; but, if such knowledge was received before such official capacity or such agency began, then no presumption of knowledge on the part of the principal will arise, unless it appears by clear and satisfactory proof either that the knowledge was present in the mind of the officer or agent at the time of the transaction in which the principal is sought to be charged with such knowledge, or that such knowledge was received by such officer or other agent at so short a time before such transaction that, in the language of Lord Eldon, it is impossible "to give a man credit for having forgotten it." As supporting these views, see The Distilled Spirits, 11 Wall. 356; *Bank* v. *Chase*, 72 Me. 226; *Bank* v. *Cushman*, 121 Mass. 490; *Hart* v. *Bank*, 33 Vt. 252; *Hayward* v. *Insurance Co.*, 52 Mo. 181. But neither under the strict rule or the relaxed rule could the plaintiff in this case be charged with knowledge of defendant's equities by reason of the knowledge of H. F. Chaffee. If he ever obtained such knowledge, it was at least three years before he became an officer of plaintiff, or before the plaintiff corporation had an existence. On the trial there was no attempt whatever to show that such knowledge was present in the mind

of Mr. Chaffee when plaintiff received the conveyance from Guernsey, and the lapse of time precludes any presumption that such was the case. Under no view of the case, as the evidence stands, could a verdict for defendant be supported; hence it was not error to direct a verdict against him.

Affirmed. All concur.