NEBRASKA LOAN & TRUST COMPANY, APPELLANT, V. PAUL
IGNOWSKI ET AL., APPELLEES.

FILED APRIL 8, 1898.   No. 7957.

1. **Reformation of Instruments: MISTAKE.**  A mistake in the terms of
   a written instrument, if mutual, will be reformed to express the
   correct intention and agreement of the parties thereto, and with
   which it was executed, and the instrument as reformed will be
   enforced.

2. ———: ———.  Reformation of an instrument to correct a mistake
   will not be accorded unless the intent and agreement which it
   will express as reformed were concurrent in the minds of the
   parties to and including the time of its execution.

APPEAL from the district court of Sherman county.
Heard below before SINCLAIR, J.   *Affirmed.*

*J. B. Cessna, John A. Casto,* and *George F. Work,* for
appellant.

*Long & Mathew, contra.*

HARRISON, C. J.

This action was instituted by the appellant, hereinafter
designated the company, to reform the interest coupons
attached to a bond and to foreclose a real estate mortgage
which had been executed and delivered to secure the pay-
ment of the amount of a loan to the mortgagor, the con-
tract of loan being evidenced by the bond and mortgage
in suit.   It was of the allegations of the petition filed

"that in the filling out and signing of said coupons 1, 2, 3, 4, and 5 to said principal bond attached a mutual mistake was made in this, that said coupons, and each of them, were made out for the sum of $19.50 instead of $39, as they should have been, and that said mistake was not discovered until long after said coupons were made out and signed." There was also a claim made for certain taxes pleaded to have been paid by the mortgagee to protect its lien, conformably and pursuant to a provision of the mortgage on the subject. The answer of the appellees, hereinafter styled the defendants, admitted the execution and delivery of the instrument upon which the suit was brought, but stated:

"Plaintiff, by its agents, represented to these defendants, more especially to the defendant Paul Ignowski, at the time said instruments were executed, and some time previous thereto, that he was obtaining from the plaintiff a loan at the rate of five and one-fourth per cent per annum, and that in consequence of the said representations defendants borrowed the sum of $600 on or about November 1, 1890, at the said agreed price of five and one-fourth per cent per annum, payable annually, for the term of five years.

"Third—That these defendants have promptly paid the interest on the said mortgages, bonds, and notes at the rate of five and one-fourth per cent per annum as agreed, said five and one-fourth per cent per annum being made up of three and one-fourth per cent on the first mortgage bond and two per cent on the second mortgage. The said amount paid annually has been the sum of $31.50, and these defendants hold a receipt in full from plaintiff, dated October 31, 1891, for the interest due on the said loan.

"Fourth—Plaintiff has accepted the interest payments of $31.50 made by these defendants annually.

"Fifth—The rate of interest in the mortgage, of which 'Exhibit B' attached to plaintiff's petition is a copy, is '6$\frac{1}{2}$ per cent per annum,' the figures '6$\frac{1}{2}$' were inserted

therein by plaintiff either in error or else fraudulently for the purpose of deceiving these defendants, who are illiterate and do not well understand the English language."

A tender to the company of the amount of taxes paid by it was pleaded, and each and every allegation of the petition of which the answer did not contain an admission was denied. In the reply each and every statement of new matter of the answer was either generally or specifically denied. A trial of the issues resulted favorably to the defendants and the company has appealed to this court.

It is disclosed by the evidence that Paul Ignowski, of defendants, made application to the company for a loan through a banker at Ashton, Nebraska, who represented the company, or at least received applications for loans, forwarded them to it, and, if approved, attended to the execution of the papers and completion of the loans. Ignowski's application was in writing, in the usual form, and for a loan in the sum of $600, with interest at eight and one-half per cent per annum, payable annually. The necessary papers, bond, coupons, notes, and mortgages were prepared at the home office of the company and forwarded to the banker in Ashton. In regard to their preparation and the mistake claimed to have been made the treasurer of the company testified as follows:

Q. Have you any personal knowledge and had you any supervision of the making out of these papers?

A. I have and did.

Q. Tell what you know about the making out of these papers.

A. After the loan committee had decided to renew the loan, I made out a memoranda for one of our clerks to make up the papers, dividing the amount to be paid annually, eight and one-half per cent interest, by ordering a bond prepared for the principal and coupons for annual interest thereon at the rate of six and one-half per cent

and the balance of two per cent per year was included in
five notes of $12 each, maturing concurrent with the
interest coupons upon the principal bond.    Upon en-
deavoring to negotiate this new loan to an eastern party
we found that through a clerical error the five coupons
for the annual interest, instead of being made up at $39
each, as recited in the mortgage and bond, were only for
$19.50 each, which is semi-annual interest instead of an-
nual interest.    This error probably occurred from the
fact that the clerk who makes our papers makes most of
her papers at semi-annual interest, and she, by mistake,
figured the semi-annual rate instead of the annual in-
terest, as she was instructed to do.

Q. State whether or not these several coupons cor-
rectly represent the amount of annual interest agreed by
the defendant to be paid on this principal bond.

A. They do not.

Q. State what the correct amount of each of these
several coupons should be in order to represent the cor-
rect amount of interest agreed by the defendant to be
paid on this principal bond?

A. They should have been $39 each.

The sole contention is that the trial court should have
decreed a reformation of the coupons so that each called
for the payment of $39 instead of $19.50.    We are satis-
fied that the evidence established the mistake on the part
of the company, and that the same occurred by reason of
a lack of care by it, or its employé who prepared the loan
papers.

It further appears in evidence that Ignowski had,
while negotiating with the appellant company, been to
St. Paul, Nebraska, and there made application to a loan
agent, which had been approved, the rate of interest con-
tracted for being seven per cent per annum.    When the
bond and mortgage in suit arrived at Ashton, Ignowski
was informed that they had been received and that they
showed that he was to be furnished the money and a
very low rate of interest was exacted, or five and one-

30

fourth per cent per annum. He then stated to the banker who was acting in the matter for the company the facts in relation to the St. Paul application and told him to retain the papers until such time as he, Ignowski, could go to the latter place and arrange that he be no further liable to fulfill his agreement there in regard to a loan. This request was acceded to by the banker. Ignowski went to St. Paul, the agent there demanded that he pay $10, the stated expenses incurred in and about the application for a loan. This he did, and was relieved from his agreement there in regard to a loan and subsequently went to Ashton and executed the instruments, the basis of this action, with the full belief and understanding that he was to be charged but five and one-fourth per cent per annum interest, and that the papers executed and delivered evidenced an agreement to such effect. Ignowski did not readily understand the English language, either spoken or written, and it is of the testimony that he at two different times, prior to signing the papers, called in a party who had a knowledge of Ignowski's native language and also of the English language to act as interpreter between Ignowski and the banker, and also to examine and explain the papers to the former. One of these was probably present at the time the instruments were executed, and one such party was a witness at the trial of the cause and testified to an examination of the papers, that he figured the interest and determined the rate to be five and one-fourth per cent per annum, and that he at the time so stated it to Ignowski; to make the examination and give Ignowski accurate information being of the purposes for which his presence and services had been requested. The reformation of a contract, in the terms of which there has been a mistake, will be accorded and the instrument as reformed will be enforced (*Hale v. Young*, 24 Neb. 464; Bispham, Principles of Equity sec. 468); but as a general rule a court will only correct a mistake in a written instrument when it has been mutual and the instrument

does not embody the terms of the contract as fully understood by both parties. (7 Wait, Actions & Defenses 328.) It must be shown to be a mutual mistake. (*Conaway v. Gore*, 24 Kan. 389.) " 'The proof of mistake must be clear and certain before an instrument can be reformed, as the object of the reformation of an instrument is to make it express what the minds of the parties to it had met upon, and what they intended to express, and supposed they had expressed, in the writing. Unless this meeting of minds, and mistake in expressing it, is made quite clear and certain by evidence, the court, should it undertake to reform, might, under color of reformation, make a contract for the parties which both never assented to or intended to make.' The mistake, to be the subject of the reformation, must be not merely the oversight of one of the parties, but such that the deed fails to express what was intended and agreed upon by both parties. The court will not reform a deed so as to add to it a new condition not contemplated by one of the parties in the execution of it. It will not make it include what was intended by one party, unless it appear that the other party at the time had the same intention." (1 Jones, Mortgages sec. 97.) "The general principles by which the court is guided in such cases are well settled. A person who seeks to rectify a deed on the ground of mistake must establish, in the clearest and most satisfactory manner, that the alleged intention to which he desires it to be made conformable continued concurrently, in the minds of all parties, down to the time of its execution." (Bispham, Principles of Equity sec. 469; Kerr, Fraud & Mistakes 421.) Though there was a mistake in the amount expressed in the coupons, it is quite clear that if reformed as prayed in the petition, they would not have expressed the contract which from the evidence the trial court determined Ignowski fully understood he was executing. The minds of the parties were not concurrent at the time of the signing, on what the coupons would express if corrected as asked, and

they would not be as contemplated and intended by Ignowski at that time. This being true, within a proper application of the rules to which we have hereinbefore directed attention, the relief sought was properly denied. The evidence might possibly have warranted a different conclusion in regard to the main issue, that is, the mutuality of the mistake, but it is sufficient to sustain the conclusion of the trial court; hence such conclusion will not be disturbed. The decree must be

AFFIRMED.

RAGAN, C., took no part in the decision.