[No. 7495]

## GIBBS ET AL. v. WALLACE ET AL.

1. CONTRACTS. *Consideration—Mutuality.* Plaintiffs being indebted to defendants in $10,759 executed a note therefor due in three years, with interest, and conveyed to defendants, as security therefor, certain lands, situate in Kansas. A contemporaneous contract provided that plaintiffs should retain possession of the lands for three years, might sell the same, paying over anything received thereon to defendants, and if they should fail to sell the lands, or should not pay the note at maturity, the title of the lands "should be and remain" in defendants, and plaintiffs should be credited on their note with the sum of $11,200. Plaintiffs having failed to pay the note demanded the credit of $11,200,

tendering what they alleged to be the balance. *Held* that the demand, and compliance therewith, would be a consideration sufficient to vest title in defendants, and bar the equity of redemption; and that there was no lack of mutuality in what was proposed. (366, 369)

2. MORTGAGE. *Conveyance Absolute As—Contract Barring Mortgagor's Equity.* Lands were conveyed as security for indebtedness. A contemporaneous contract provided that if the indebtedness should not be paid at or before its maturity, the land should remain the property of the mortgagees, and the mortgagors should be entitled to a certain credit. *Held* that the mortgagor insisting that the creditor should accept the lands, and allow the credit, the mortgagees were not to be heard to contend that the provision for thus barring the equity of redemption was invalid; that the mortgagors insisting upon the mortgagees' acceptance of the land, according to his contract was estopped to afterwards deny their title. (368, 369)

3. CONTRACTS. *Construction.* Several instruments executed at the same time, between the same parties, and relating to the same matter, are to be construed together. (371)

4. EQUITY. *Reformation of Writings—Measure of Proof Required.* One seeking the reformation of a writing has, not only the burden of proof, but must produce evidence sufficient to rebut the strong presumption created by the writing itself. (372)

5. ACCOUNT—*Mortgagor and Mortgagee.* Lands were conveyed by deed absolute, as security, with an agreement that if the indebtedness should not be paid at or before its maturity, the mortgagee should retain the title, allowing a certain credit. The conveyance contained a covenant against incumbrances, except a certain mortgage.

The mortgagors were held entitled to a credit for interest paid by them upon the mortgage recited, which had accrued prior to the date of the conveyance; also for taxes paid upon the lands, and upon other lands included in the security; and it appearing that there was a second mortgage not mentioned in the conveyance or accompanying contract, they were held entitled to an allowance for payments made on account thereof, with interest upon each payment from the date thereof. (373, 374)

6. TENDER. *Effect.* Tender of more than the amount of the debt stops interest from the date of the tender. (373)

*Error to Rio Grande District Court.*—Hon. CHARLES C. HOLBROOK, Judge.

Mr. JESSE C. WILEY, Mr. HORACE N. HAWKINS, Mr. STEPHEN W. RYAN, for plaintiffs in error.

Mr. JESSE STEPHENSON, Messrs. GOUDY & TWITCHELL, Mr. J. H. BURKHARDT, for defendants in error.

Mr. JUSTICE HILL delivered the opinion of the court:

This action was by the Gibbses to compel the Wallaces to accept a certain sum as due from the Gibbses on a note payable to the Wallaces, and to surrender the note; also to reassign and deliver a certain contract for the purchase of land by the Gibbses from a railroad company, assigned to the Wallaces as security for the payment of this note.

The complaint alleges the execution of sundry instruments and conveyances between the parties, and the facts following, whereby it was alleged that the Gibbses were entitled to this relief. In their answer, the Wallaces admit the execution of these instruments, but allege, that regardless of the language in the contract and the deed to certain Kansas land, given by the Gibbses to the Wallaces, that it was agreed in the event this land was taken by the Wallaces as part payment of their indebtedness, the amount of an incumbrance existing thereon at the time the deed was executed should be deducted from the price at which it was to be taken. The deed states that the grantees assume and agree to pay this incumbrance, but the Wallaces, in their answer, allege that by mutual mistake this portion of their contracts, by which this deduction of the Kansas incumbrance was to be made, was omitted from the instruments, etc. They also allege that the Kansas land, as well as the railroad land, which is in Colorado, was taken for security only. They ask for an accounting, for reformation of the instruments, and that both tracts of land

be ordered sold, etc. Trial was to the court, which found, that all the property had been pledged as security only for the debt; that the deed for the Kansas land was intended as a mortgage; that the debt had never been paid; that the amount due was $15,319.96. On this finding decree was entered which provided that the Kansas land, as well as the contract for the railroad land, be sold. The Sheriff of Rio Grande county was appointed to make the sale. The decree commands that the Gibbses should also execute and deliver a quit claim deed to the Kansas land to the grantee named in the Sheriff's deed. The Gibbses bring the case here for review.

The contract, under which the deed to the land was executed, sets forth, that the Gibbses had conveyed the Kansas land to the Wallaces, and had executed their note to them for $10,750.00, due in three years, with interest at six per cent; that the Gibbses should have possession during said period, or until sold as therein stipulated. Also, it in part, reads:

"But in case said parties of the second part (the Gibbses) fail to either sell said lands or pay their said promissory note as aforesaid then in that case the title of said above described lands shall be and remain in the said parties of the first part (the Wallaces), and said parties of the second part shall be credited on their said promissory note the sum of Eleven Thousand, Two Hundred Dollars."

The Wallaces urge, that this was an attempt to fix the rights of the parties in the event that the Gibbses should fail to either sell the land or pay their note; that the deed was in fact intended as a mortgage; that the clause in the contract whereby the Gibbses agreed to cut off their right of redemption was invalid. Assuming that this is correct, it should not defeat that portion of the contract whereby the Wallaces agreed that in case

this land was not sold prior to the expiration of the three years, they would take it, and credit the Gibbses with $11,200.00 upon their note, when the Gibbses were not seeking to take advantage of that clause, and when their action in tendering to the Wallaces an amount in payment of the balance, after this credit is given, and their demand for the credit and the cancellation of the note, would be a consideration for the subsequent transaction sufficient to vest the title in the Wallaces.—*Wynkoop v. Cowing*, 21 Ill. 570.

These acts would also estop the Gibbses from claiming that the deed did not convey a good title to the property.—16 Cyc. 802-805; Vol. 2, Jones on Mortgages, (5th ed.), Sec. 1050.

We cannot agree that the declaration of absolute title at a certain date was the real or any material consideration for the execution of the instruments by the Wallaces, but to the contrary, the record discloses that at the time of the execution of these instruments, the Wallaces were anxious to secure the title to this land as security for the amount then owing them by the Gibbses, and as one of the inducements to thus pledge it, they agreed in case the Gibbses failed to pay the note that they would take the land at $11,200, and credit this amount upon the note. This was a material inducement for the Gibbses to enter into the contract because at the time of its execution they had never seen the land, but one of the Wallaces had inspected it for them, and it was upon the strength of his report and recommendation that they accepted it in a trade. Under such circumstances, in order to get it pledged to them as security, the Wallaces agreed that under certain conditions which might arise, they would take it, and credit the Gibbses $11,200 on their note, and we see no reason why they should not be held to the terms of their contract in this

respect. The real consideration for this agreement to purchase and indorse was the pledging of the security. This consideration has not failed, and did not lack mutuality. As sustaining this conclusion, we call attention to the following authorities.—9 Cyc. 327; Vol. 1, Page on Contracts, Sec. 302; *Bryant v. Gale*, 5 Vt. 416; *Spear v. Orendorf*, 26 Md. 37; *Turpie v. Lowe*, 114 Ind. 37, 15 N. E. 834; *Montgomery L. & P. Co. v. Montgomery Traction Co.*, (C. C.) 191 Fed. 657; *Hayes v. O'Brien*, 149 Ill. 403, 37 N. E. 73, 23 L. R. A. 555.

We further call attention that the record discloses that this alleged lack of mutuality was not the reason why the Wallaces refused to comply with this provision. Neither did they object because the Gibbses had failed to tender a quit claim deed when demanding that the indorsement be made, and no such deed was ever requested, but to the contrary, the ground for their refusal was the contention which had arisen over the $2,500 first mortgage. In commenting upon this, counsel for the Wallaces, in part, say:

"The Gibbs, to use a slang phrase, tried to 'put one over' on the Wallaces by having them assume the $2,500.00 mortgage in the deed.

If this trick had not been played on the Wallaces, or if the Gibbs had not tried to over-reach them, there would never have been any question in this case. The Wallaces would have taken the land at $11,200.00 free from the mortgage, and have credited that amount on the Gibbs note, upon the Gibbs giving to them a subsequent deed for their equity of redemption, *   *   *.

The Wallaces have always stood ready and willing to take over the Kansas land for $11,200.00 clear of the mortgage, and are now ready and willing to do so, but instead of so doing, the Gibbs are insisting, contrary to the terms of the contract alone, but relying upon the

clause in the deed, improperly put there by the attorney for the Gibbs, that the Wallaces should take over the Kansas land at the excessive price of $13,700.00, or, in other words, by crediting the Gibbs $11,200.00 and assuming and paying the mortgage of $2,500.00.''

In the former opinion, upon account of the error in refusing to recognize as valid the clause to purchase, etc., we reversed the judgment and remanded the cause for a new trial upon this issue of mutual mistake. Upon account of conditions which have occurred subsequent to the former trial, counsel have joined in a request that we determine that question upon the record as presented and make final disposition of the case; it being in equity, we have decided to do so.

The contract, in substance, states that the Gibbses have this day conveyed to the Wallaces the Kansas land, and that the Gibbses have this day executed and delivered to the Wallaces their note for $10,750.00 with interest at six per cent per annum due May 4, 1909. The Wallaces agree that the Gibbses shall have possession of the land until May 4, 1909, or until sold as therein provided. The Gibbses agree if sold before May 4, 1909, to turn over the proceeds in payment of the note as far as it will go.

The Wallaces agree that if the Gibbses shall pay their note on or before May 4, 1909, they will reconvey if land has not been sold. It neither is accomplished, it is then provided in substance that the Wallaces shall keep the land and credit $11,200 on the note. The deed for the Kansas land from the Gibbses to the Wallaces includes the following:

''That the same are free and clear from all former * * * incumbrances * * * except a certain mortgage to the Warren Mortgage Company to secure the payment of $2,500.00 with 6½ per cent. interest per an-

num, which said parties of the second part assumes and agrees to pay."

These instruments bear date May 4, 1906, but were not executed until May 17th following.

It is elementary that where two instruments are executed at the same time between the same parties pertaining to the same transaction, or in part concerning the same matter, in order to arrive at a correct conclusion of what is intended on the subject covered by both, they should be considered and construed together. When thus considered, the language in these instruments sustains the Gibbses' contention. This is not seriously challenged by the Wallaces as in their pleadings they accept it as correct, but seek to avoid their effect by alleging a mutual mistake, as follows:

"Sixth. That it was the agreement and understanding between the plaintiffs and defendants that said Kansas land was to be conveyed to these defendants as security only, and in the event of being taken by defendants as part payment of their said debt the then outstand encumbrance against the same amounting to the sum of $2,687.50, together with any interest and taxes that defendants might be required to advance and pay, to protect and preserve said Kansas land and said land contract as security, should be deducted from said sum of $11,200, the price at which said Kansas land was to be taken by the defendants.

And these defendants allege that at the time said agreement set out in paragraph 5 of said complaint was made, executed and delivered, the part of the agreement between the parties thereto as in this paragraph sixth alleged was, by the mutual mistake of the parties thereto, omitted from said agreement as written."

This was denied by the Gibbses and presents the real dispute which brought about this controversy.

In Vol. 11, Ency. of Evidence, p. 38, in commenting upon the burden of proof in such cases it is said:

·"In General.—A party seeking a decree reforming a written instrument not only has the burden of proof as does a plaintiff in an action generally, but must produce sufficient evidence to rebut the strong presumption created by the existence of the written instrument itself."

At page 47, it is also said:

"It is the general rule that a party seeking reformation of a written instrument must produce more than a mere preponderance of evidence, in order to authorize the court to grant the relief sought."

These rules obtain in this jurisdiction.—*Wilson v. Morris,* 4 Colo. App. 242, 36 Pac. 248; *Insurance Company v. Smith,* 10 Colo. App. 121.

See also.—*Maxwell Land-Grant Case,* 121 U. S. 325, 30 L. Ed. 949, 17 Sup. Ct. 1015; Vol. 2, Pomeroy's Equity Jurisprudence, (3rd ed.) Sec. 859.

When tested by these rules, a careful study of the evidence convinces us that the Wallaces have failed to establish any mutual mistake pertaining to the contents of the instruments. It would accomplish no good purpose to comment upon it, further than to state it is insufficient to overcome the strong presumption created by the evidence of the written instruments, for which reason they must be allowed to stand as written and the accounting between the parties be made accordingly.

In this connection we call attention that the record discloses there was a second mortgage upon the Kansas land to secure what is termed commission notes in the sum of $187.50, which the Wallaces paid. This did not come under the provisions of the contract and deed, and the Wallaces should be reimbursed for these payments with interest at eight per cent from the dates paid. They also paid $38.50 taxes upon the railroad lands, for which

they are entitled to be reimbursed with interest; also, for taxes paid on the Kansas land in the sum of $94.37 with interest from the dates paid. They also paid $62.50 interest which had accrued upon the Kansas first mortgage note prior to the date of the deed for this land, and they are entitled to this money with interest.

We cannot agree that they should be reimbursed for the interest paid upon the Kansas mortgage, accruing after the execution of the contract and deed, as this would be in conflict with their terms when construed together by which the Wallace's assumed and agreed to pay this incumbrance with interest, which, as we construe it, means from that date, and that the later credit of $11,200 was intended for the equity, subject to this incumbrance with interest, as the deed states to hold otherwise would be to give no force or effect to the language used.

In the circumstances of this case we cannot agree that the tender of the Gibbses' $1,500 in payment of the balance due on this note was not sufficient to stop the running of interest on that amount from that date. This amount was more than sufficient to pay the balance due upon the note and interest proper, and was not refused for this reason, nor for the reason that any taxes or back interest upon the $2,500 mortgage or the commission mortgage had not been paid, but upon account of the contention over the payment of the first mortgage. This contention having been decided in favor of the Gibbses, the interest on the $1,500 due the Wallaces should cease at the date of this tender.

To, in part, recapitulate, our conclusion is, that at the date of the maturity of the note, May 4, 1909, which was also the date of the tender, the account should stand as follows:

Principal of the Gibbses note................$10,750.00

Less a credit indorsed by the Wallaces for
    discounts on bills of the Gibbses paid by
    the Wallaces under another contract.....     76.91

Balance due Wallaces on note...............$10,673.09
Interest May 4, '06 to May 4, '09.............  1,921.15

Total amount due on note...................$12,594.24
Credit for Kansas land, as per contract...... 11,200.00

Balance due Wallaces.......................  1,394.24
Taxes paid by Wallaces on lands............    132.67
Commission notes paid by Wallaces..........    187.50
Interest due on first mortgage note before exe-
    cution of contracts paid by Wallace......     62.50
Interest on last three items at 8% from date
    paid until May 4, 1909..................     50.19

Total due Wallaces on all items May 4, '09....$ 1,827.09

Interest should cease on $1,500 of this amount upon account of the previous tender from this date, but should be added upon the balance, viz, $327.09, at eight per cent per annum from this date, until the date final decree is rendered.

For the reasons herein stated, the judgment is reversed and the cause remanded with instructions to enter a decree adjudging the Gibbses to be indebted to the Wallaces in the sum of $1,827.09, with interest upon $327.09 of this amount at eight per cent per annum from May 4, 1909, until the date of the decree hereafter to be entered, and that in case the Gibbses pay this amount to the Wallaces, or into court for them, within ninety days thereafter with interest at eight per cent per annum from the date of the decree, and also execute and deliver with said payment to the Wallaces, or into court

for them, their quitclaim deed for the Kansas land, and also pay the Wallaces an amount equal to any subsequent advances made by them upon behalf of the railroad land, if any, and interest thereon from the dates paid, that the Wallaces be commanded to reassign to the Gibbses the contract for the railroad land and quitclaim to them any right, title and interest that they may have, or are entitled to acquire, on account of the assignment of said land contract to them, and also to cancel and surrender to the Gibbses the promissory note herein referred to, and that in case the Gibbses shall fail, refuse or neglect to make payment of said amounts, and to execute and deliver said quitclaim deed as aforesaid, within the time herein provided, that the decree provide for the sale of the railroad land contract and of all the right, title and interest of the parties hereto to the lands therein described and acquired thereunder, as in cases of foreclosure of mortgages on real estate for the purposes of satisfying the indebtedness as herein determined and any other subsequent advances made upon the railroad contract, and if the amount received at such sale be insufficient for this purpose, a deficiency judgment be entered as in foreclosure cases, and that in case of such sale the Gibbses be commanded to execute and deliver their quitclaim deed to the Wallaces to the Kansas land as hereinbefore provided, and that in default the clerk of the district court of Rio Grande county be empowered to execute it for them with the same force and effect as if executed by them.  The costs in both courts should be taxed against the Wallaces.  The former opinion is withdrawn.

*Reversed and remanded with instructions.*
Decision *en banc.*

Decided July 8, A. D. 1914. Rehearing granted January 4, 1915. Decided on Rehearing April 5, A. D. 1915.