## No. 11,794.

ANDERSON, ET AL. v. JUANITA COAL AND COKE COMPANY.

Decided April 30, 1928.

Action to reform a deed. Judgment for plaintiff.

*Reversed.*

1. REFORMATION OF INSTRUMENTS—*Proof.* To justify reformation of a deed, the proof must be clear, unequivocal and indubitable.

2. *Deed.* Where a party seeks to reform a deed conveying a right of way for a ditch, so as to convey absolute title to the land described, he must clearly establish that such was the intent of the parties before and at the time of the execution of the deed, and that the insertion of the clause reducing the estate to an easement was unknown to, and unauthorized by, both grantor and grantee.

3. CONTRACT—*Deed—Effect.* An executory contract until performed, is subject to such alterations as the parties may agree upon; but when it is finally consummated and a deed made in pursuance of it is accepted, it is presumed that the deed gives full expression to the final purpose of the parties.

4. REFORMATION OF INSTRUMENTS—*Deed.* In an action to reform a deed so as to convey absolute title to the land described, instead of a ditch right of way over it, evidence reviewed and held insufficient to justify the reformation asked.

5. REAL PROPERTY—*Title—Notice.* Where a canal company obtained a deed for a right of way for its ditch, the apparent possession and use by the company for right of way purposes only, being consistent with the estate shown by the deed which it had caused to be recorded, subsequent purchasers were not, by such possession and user, chargeable with notice of any other title or equity claimed by the company in the land.

6. DEED—*Rents, Issues and Profits—Construction.* A conveyance by deed of a ditch right of way, together with rents, issues and profits, can not be held to pass the fee of the land itself, where the thing granted is specifically designated as a right of way.

7. REFORMATION OF INSTRUMENTS—*Deed—Burden of Proof.* In an action to reform a deed, defendants having the legal title, and plaintiff relying upon an equity of reformation, it was incumbent upon the latter to establish an equity superior to that of defendants, by showing that at the time of their purchase they had notice of plaintiff's equity, otherwise the legal title would prevail.

*Error to the District Court of Delta County, Hon. Milton R. Welch, Judge.*

Mr. ADAIR J. HOTCHKISS, Mr. MILLARD FAIRLAMB, Mr. CHARLES N. FAIRLAMB, for plaintiffs in error.

Messrs. VINCENT & BOWIE, for defendant in error.

*Department One.*

MR. JUSTICE WALKER delivered the opinion of the court.

THIS action was brought by the Juanita Coal & Coke Company, a corporation, defendant in error, against plaintiffs in error and others, to obtain a reformation of a deed. The trial court granted the reformation, and to that decree this writ of error is prosecuted.

The deed involved was made by James M. Freeman, October 31, 1898, to the Fire Mountain Canal Company, a mutual ditch corporation, and was recorded November 17, 1898. It is in the usual form of a warranty deed. The deed grants and conveys "a right of way 50 feet in width across any portion" of a certain parcel of land in Delta county, which is then described by metes and bounds, following which is this language: "Containing 6.66 acres, and being a strip of land lying south of the Deer Trail ditch and north of a line 26 feet south of the center line of the Fire Mountain canal as now surveyed, with the right to move or change the line of said ditch to and over any portion of the above described land."

The reformation sought by the complaint, and granted by the decree, consisted only in striking from the deed the words ''a right of way 50 feet in width across any portion of.'' The ground upon which this reformation was granted was that the contract between Freeman and his grantee, the canal company, was for the conveyance of the land itself, and not of a right of way, and that the insertion of the clause last quoted was a mistake of the draftsman of the deed. The defendant in error is grantee by quitclaim deed, in 1924, from the Fire Mountain Canal Company, of a portion of the tract included within the mete and bound description. Plaintiffs in error are remote grantees by warranty deeds from James M. Freeman, and the descriptions in their deeds include the portion of the tract claimed by the defendant in error. The deed from Freeman to the first of the intermediate grantors of the plaintiffs in error, Charles Morgan, was made in 1899, and was expressly made subject to ''a certain right of way given to the Fire Mountain Canal Company'' as described in the deed of Freeman, to the record of which reference is made in the deed. In deeds from Charles Morgan to Alpha Morgan, and from Alpha Morgan to Charles Morgan, the same reference is made to the right of way. In all subsequent conveyances in the chains of title of plaintiffs in error, no exception whatever is made either of the right of way or the tract here involved.

We are of the opinion that the decree of the trial court can not stand. The evidence relied upon to support it does not either in quantity or quality meet the well settled requirements prescribed in cases of reformation, and if it did, the relief would not under the circumstances of this case be available against the plaintiffs in error.

1. In *Merrick v. Morelock,* 73 Colo. 245, 215 Pac. 133, this court said, ''To justify reformation of a contract, the proof must be clear, unequivocal and indubitable.'' In 2 Pomeroy's Eq. Jurisprudence (3rd Ed.) at page 1515, the author says: ''Courts of equity do not grant

the high remedy of reformation upon a probability, nor even upon a mere preponderance of evidence, but only upon a certainty of the error.''

This language was quoted with approval in *Wilson v. Morris,* 4 Colo. App. 242, 36 Pac. 248; and again in *Wells v. Crawford,* 23 Colo. App. 103, 127 Pac. 914. Other Colorado decisions in which the rule has been announced in substantially the same language are: *Loukowski v. Pryor,* 46 Colo. 584, 106 Pac. 7; *Gibbs v. Wallace,* 58 Colo. 364, 147 Pac. 686; *Insurance Co. v. Smith,* 10 Colo. App. 121, 51 Pac. 170. A host of authorities announcing and illustrating the rule will be found in the note to the case of *Perkins v. Herring* (110 Va. 822), reported in 19 Am. & Eng. Annotated Cases, at page 342; and in the note to *Williams v. Hamliton* (104 Ia. 432), reported in 65 Am. St. Rep. 475.

The proposition which the plaintiffs were obliged to establish by the character and degree of evidence required by the above authorities, was that James M. Freeman and the Fire Mountain Canal Company, prior to the execution of the deed, reached an agreement for the sale and conveyance of the land itself, and not for a right of way; that such agreement continued concurrently in the minds of both parties down to the time of the execution of the deed; and that the insertion of the clause reducing the estate to an easement was unknown to and unauthorized by both grantor and grantee. *Coppes v. Keystone P. & F. Co.,* 36 Pa. Super. Ct. 38; *Koen v. Kerns,* 47 W. Va. 575, 35 S. E. 902; *Whitney v. Smith,* 33 Minn. 124, 22 N. W. 181; *Crawford v. Willoughby,* 192 N. C. 269, 134 S. E. 494; 8 Mo. App. 585; *Nebraska Loan & Trust Co. v. Ignowski,* 54 Neb. 398, 74 N. W. 852; *Carter v. McArtor,* 28 Grat. 356; Kerr on Fraud & Mistake, (4th Ed.), p. 498. The application of these tests to the evidence introduced in this case required that the reformation of the deed be denied. Freeman, the grantor, died several years before the suit was brought. Of the five persons constituting the board of directors of the grantee

corporation at the time the deed was given, four are either dead or their whereabouts unknown. The scrivener who drew the deed was Charles L. Pike, who was at the time secretary of the Canal Company. He was a lawyer. He had also died before the trial. The deed was witnessed by Pike and one Amy E. Williams. The latter was not a witness at the trial, and there was no explanation of her absence. The plaintiff below, to establish the mistake, relied chiefly upon the testimony of E. M. Duke, who was one of the directors of the Canal Company at the time of the transaction, and was its president in the year 1897. Plaintiff also relied upon proof of statements made by Freeman after the execution of the deed. Duke testified that he acted upon a committee of three appointed July 29, 1897, by the board of directors, to make arrangements for a right of way for the ditch of the canal company then about to be constructed across Freeman's land; that of the committee he only entered into the negotiations with Freeman, and that he carried them to a conclusion. He testified that no one was present at the time of the negotiations except himself, Freeman, and Freeman's wife. He was unable to tell the conversation, and said it was difficult to recall, it having occurred more than twenty-five years before. The following excerpts will show the tenor of his testimony:

"I went up to look over the ditch right of way to see what could be done with Mr. Freeman to secure a right of way through the place. Mr. Freeman contended that we damaged him on all of this land between the Fire Mountain canal and the Deer Trail ditch. So we settled on that basis, that we would pay him $20 an acre for all of that land. * * * Why, we were securing a right of way over Mr. Freeman's land for our ditch, that was our idea, and after looking over the ground we thought we were damaging this piece of ground above the Fire Mountain canal, so we bought all of the land from Mr. Freeman. * * * Well that was about all there was to it, we just made a deal for that piece of land.

᠊ * *   We did not buy a right of way 50 feet wide, we bought all of this land for a right of way. We would have made a deal for a right of way, but I couldn't get a right of way without paying for all of it, so I just took all of the land.''

Mrs. Belle Freeman, widow of James M., testified to the transaction between Freeman and Duke, as follows: ''Mr. Duke wanted to get this strip of land that lays between the two ditches. Mr. Freeman was willing he should have it. He said it would be no good to him, it was such a small strip of land. There was just an agreement between the two that they could have the land.''

It will be noted that, as to Duke's aim in the negotiations, there is a variance between his testimony and Mrs. Freeman's. Of Duke's testimony (and to a less extent, of Mrs. Freeman's) it is to be observed that it is in the form of conclusions. It is no doubt the best that the recollection of the witness could furnish after so long a lapse of time. But since it does not undertake to state either the words or the substance of the negotiations, but merely the conclusion of the witness as to their result, it would hardly be competent to establish the terms of the contract even in a suit where a less convincing degree of testimony is required than as the basis of a reformation. For adverse comment on this character of evidence in actions of reformation, see *Underwood v. Cave*, 176 Mo. 1, 75 S. W. 451; *Nicoll v. Mason*, 49 Ill. 358; *Wyche v. Greene*, 11 Ga. 159, 176.

However, even if full effect should be given to this testimony, and if the court were convinced by it that there was a specific agreement made between Duke and Freeman for the purchase of the land itself, there would still be a controlling reason why a decree for reformation could not rest upon Duke's testimony. Duke testified that his negotiations with Freeman were carried on in the fall and winter of 1897–1898, and that he had nothing to do with the negotiations, if any there were, after the spring of 1898. His statement that other

members of the two committees that were appointed by the board to negotiate with Freeman did not do so, is necessarily the result of hearsay, and is at variance with other testimony as hereinafter pointed out. So far as the canal company's minutes show, the other members of the committees had equal authority in the matter with Duke. The deed, as shown above, was not made until October 31, 1898. There was thus a period of several months elapsing between the conclusion of Duke's negotiations with Freeman and the giving of the deed. Duke's understanding with Freeman appears to have been entirely oral. The deed was presented by Pike, the secretary of the canal company, at a meeting of the board of directors, November 5, 1898, as shown by the minutes of the canal company. At that meeting, all five directors, including Duke, were present. The secretary was then instructed to place stamps on the deed and have it recorded.

In order to reach the conclusion that a mistake was made in the deed it is necessary to presume that during this period of several months no other negotiations with Freeman, on behalf of the canal company, were carried on by any one; that the four members of the board of directors had the same understanding of the contract with Freeman that Duke had; and that the secretary in drawing the deed was authorized to embody in it only the result of the oral understanding between Duke and Freeman. Not only so, but it would be necessary to presume that Freeman did not read the deed, and consequently was ignorant that it purported to convey only a right of way. It would also be necessary to presume that the four other members of the board, as well as Duke himself, did not read the deed when it was presented at the board meeting. But Duke testified he did not know whether or not they read the deed.

Moreover there is no claim made in the testimony of Duke that he ever gave any instructions to Pike for the drawing of the deed, and the only instructions shown

by the evidence are those contained in the minutes of December 7, 1898, in which the secretary was instructed, "to draft a contract for a right of way across the land owned by Milton Freeman, to be paid on a basis of $20 per acre for all land below the line of the present Freeman Ditch and for 23 feet below the medial line of the canal."

Duke, when asked about this, said: "We had a contract with him of what that was to be, and how much ground, and so on."

This would apparently mean that these instructions, which are consistent with the deed as drawn, were afterwards actually embodied in a contract. It is true that after that date a new committee was appointed "to make full arrangements to secure a right of way across the lands of Freeman," but this is not inconsistent with the completion of the arrangements on the basis which had been already stated in the canal company's minutes.

Instead of indulging in the presumption that Duke's original agreement with Freeman, as now claimed by him, was carried forward several months to the date of the deed, we must presume that the deed as finally executed, embodied the actual and ultimate agreement, of which it is certainly the most satisfactory evidence. In *Whitney v. Smith, supra,* the following statement of the law is supported by a long array of authorities: "An executory contract, until fully performed, is subject to such alterations as the parties may agree upon; but when it is finally consummated, and a deed made in pursuance of it is accepted, it is presumed that the deed gives full expression to the final purpose of the parties; and if the deed differs from the contract, the deed itself being the last express agreement upon the subject, would be prima facie evidence that the change had been mutually agreed upon. Hence the mere fact that the contract and deed do not agree, will not authorize the interference of a court to correct the deed. This can only be done when other proof is given that the discrepancy has arisen through fraud or mistake."

So also in the case of *Carter v. McArtor, supra,* the court said: "It must not only appear that the parties entertained a different intention in the first instance, but that it was not changed at or before the execution of the instrument; for otherwise, the legal and natural inference is, it was laid aside for that expressed in the writing."

In fact, the testimony in this case shows that after Duke's negotiations had been concluded, the matter still seems to have been an open one as between Freeman and the canal company. The witness Fred Hotchkiss testified that in July or August, 1898, he assisted in the survey of the tract in dispute, and that before the survey was made he had a conversation with Freeman in which Freeman said that he wanted pay for all the land, but that the canal company wanted a right of way, and that he was willing to grant it, but that he wanted to see that all the land was surveyed between the Fire Mountain canal and the Deer Trail ditch, for the canal would absolutely ruin that land for his use. Later, and before the survey, and in the presence of Hotchkiss, Freeman made this same statement to C. R. Miller, who was then superintendent of the canal company, and who was a member of the board when the deed was executed. Miller then stated to Freeman that the canal company did not want to buy the land, they had plenty of land down on the mesa, but that they did want a right of way, and Freeman told Miller at that time that the canal company would have to pay Freeman for the whole tract of land because it absolutely ruined it. Immediately after that conversation the entire tract was surveyed. The testimony of the witness Hotchkiss was given credence by the trial judge, but he construed it as sustaining the contention of the plaintiff below. It was, however, inconsistent with Duke's testimony that he had previous to that time completed the agreement. Not only so, but it manifests what was apparent from other undisputed testimony, that what the canal com-

pany desired was a right of way only. No doubt, from the testimony, Freeman demanded and obtained full consideration for the land itself, but this circumstance, while a strong one, is by no means conclusive of the estate intended to be conveyed or received in the present instance. It appears that such consideration was first demanded by the grantor on the theory of damages to the residue of the tract. The shifting servitude actually created by the language of the deed rendered the ownership of the entire surface of the tract of little practical stability. Moreover, there were aparently reasons why the canal company did not wish to acquire the land itself, even if the grantor had been willing to give them full title. They had no use for the land except for a right of way. They were not organized for the purpose of acquiring land, and by the terms of the deed in question they were given a flexible easement which served their purpose as fully as an absolute title to the land would have done.

General statements of the grantor, such as were testified to by witnesses for the plaintiff in this case, that he had "sold the land" to the canal company, while admissible, are not entitled to great weight, because they do not go directly to the point of the nature of the estate sold, and so do not have any strong tendency to prove the mistake claimed. Especially is such evidence of little weight when contrasted with the solemn assertion of title to the land subject only to a right of way made by Freeman in his deed to Morgan in 1899.

This right of way deed had been on record for more than a quarter of a century. The value of the land in the vicinity had become enhanced by reason of changed industrial conditions. Such circumstances emphasize the requirement for clear, indubitable and convincing evidence of the alleged mistake. 34 Cyc. 990; *Stiles v. Willis,* 66 Md. 552, 8 Atl. 353; *Wyche v. Greene, supra.*

Giving, therefore, to the testimony adduced by the plaintiff below, full credence, and without in any wise

invading the province of the trial judge to pass upon the credibility of the witnesses, we are clearly of the opinion that the evidence before the court was insufficient to justify that court in overturning a muniment of title which had remained unchallenged for a length of time so great that most of those who had engaged in its preparation and execution could not be called to defend or explain it.

2. The trial court was also clearly wrong in holding that the plaintiffs in error were not bona fide purchasers for value, of the tract in question. Freeman deeded the forty acres in which this tract was located, to Charles Morgan, in 1899, subject as stated above to the right of way to the canal company as recorded. The Andersons by mesne conveyances which did not even except the right of way, became vested with the legal title to this tract many years before this suit was begun, and before, so far as the record shows, any question had arisen of the correctness of the deed to the canal company. Certainly there is no sufficient evidence to show, and the trial court did not find, that any of the owners after Freeman had actual knowledge of any claim to the land by the canal company beyond what was indicated by the use being made of the land, and the record of the deed. The court found however that the plaintiffs in error did not examine the county records at the time they purchased the land. It appears that shortly after the canal company's deed was executed the canal was constructed through the Freeman land, and a year or so afterwards a fence was erected along the south boundary of the right of way tract by the then owners of the land now held by the Andersons. There was also a fence to the north of the right of way tract, but not along its boundary. The court below found that the land between the Fire Mountain canal and the Deer Trail ditch had remained uncultivated. Whether considered as of the time when Freeman made his deed to Morgan, or as of the time when the Andersons acquired their interests, the

physical conditions which would be apparent to a
prospective purchaser were wholly consistent with the
ownership of an easement merely on the part of the
canal company.  Indeed it is conceded that the canal
company never made any use of the tract except as a
ditch right of way and for camping and other purposes
incidental to maintaining and repairing the ditch.  It
is true the evidence shows that a certain rock wing
maintained in connection with the ditch extended beyond
the 50 feet right of way for the ditch as than in use,
but the evidence does not show when this wing was con-
structed, nor whether it was there when these plaintiffs
in error or their predecessors in title purchased the land.
At all events, it was a use merely incidental to the main-
tenance of the ditch, and it did not materially add to the
character of the possession or of the notice to be im-
puted thereby.  The apparent possession or user of the
canal company being thus consistent with the estate
shown by the deed which it had caused to be recorded,
subsequent purchasers were not by such possession or
user chargeable with notice of any other title or equity
in the canal company.  *King v. Ackroyd*, 28 Colo. 488,
66 Pac. 906; *Western Chemical Co. v. McCaffrey*, 47
Colo. 397, 107 Pac. 1081; *Crooks v. Jenkins*, 124 Iowa
317, 100 N. W. 82; *Red River Land Co. v. Smith*, 7 N. D.
236, 74 N. W. 194; *Woods v. Farmers*, 7 Watts', 383,
32 Am. Dec. 772; *Dutton v. McReynolds*, 31 Minn. 66,
16 N. W. 468; *Williams v. Sprigg*, 6 Oh. St. 585.

These decisions do not rest the rule on the fact of
actual reliance upon the record by the subsequent pur-
chaser.  The recorded title is regarded as the authentic
answer of the owner which the subsequent purchaser
would have received had he prosecuted the inquiry sug-
gested by the possession, or, as stated in *Dutton v.
McReynolds, supra*, he is presumed to have had knowl-
edge of the record.  But defendant in error says that
if the plaintiffs in error are to be presumed to have had
knowledge of the deed, that instrument had peculiarities

which should have prompted further inquiry as to the nature of the estate conveyed. The basis of this argument is, that the written description in the deed was followed by the usual printed clause, "Together with all and singular the hereditaments and appurtenances thereunto belonging * * * rents, issues and profits thereof," etc.

It is said the words, "rents, issues and profits" have been held to pass the fee of the land itself. But it has not been so held in any case where, as here, the thing granted was specifically designated as a right of way. Easements lie in grant, and pass by deed, and for that purpose, a warranty deed is customary. This one not only defined and described a right of way, as the estate to be conveyed, but concluded its written description with language which would certainly not have been used if it had been intended to convey the land. We can not agree with the learned trial judge that the retention in the deed, of printed language more appropriate to a corporeal but not incompatible with an incorporeal hereditament, should have put one examining the record upon notice that a mistake had been made in drafting the instrument.

Since the defendants had the legal title to the disputed tract, and the plaintiff was relying upon an equity of reformation, it was incumbent upon the plaintiff to establish an equity superior to that of the defendants, by showing that the defendants had at the time of their purchase, notice of plaintiff's equity. Otherwise, the legal title must prevail. *Townsend v. Little,* 109 U. S. 504, 3 Sup. Ct. 357, 27 L. Ed. 1012. On this branch of the case, we must hold that the plaintiffs have failed in their proof.

For the reasons given, the judgment and decree must be reversed, and it is so ordered.

MR. JUSTICE BURKE, sitting for MR. CHIEF JUSTICE DENISON, MR. JUSTICE WHITFORD, and MR. JUSTICE ADAMS concur.