## No. 14,011.

UNITED STATES MUTUAL INSURANCE COMPANY OF DENVER
*v.* TAYLOR.
(69 P. [2d] 245)

Decided May 3, 1937.   Rehearing denied June 21, 1937.

Mr. EARLE F. WINGREN, Mr. GEORGE A. PUGHE, Mr. WILLIAM H. SCOFIELD, for plaintiff in error.

Mr. E. G. VANATTA, for defendant in error.

*In Department.*

MR. JUSTICE BOUCK delivered the opinion of the court.

A JUDGMENT was recovered herein on an accident insurance policy and is now before us for review.

On June 14, 1935, the plaintiff in error insurance company, defendant below, issued to Orien B. Taylor a policy providing among other things for the payment of $1,000 to his beneficiary in monthly installments of $100 if death should occur by accident. On September 20, 1935, Taylor met an accidental death. On October 14 proof of death was duly submitted to the company by Taylor's widow as beneficiary. She was plaintiff below and is defendant in error here.

The insurance application was on a printed blank prepared by the company, but filled out and signed by Taylor. It requested insurance in the principal sum of $1,500 with monthly indemnity of $100, and stated the first premium to be $50 for twelve months. A corresponding "binding receipt" was issued to Taylor on June 14, 1935, by the company's soliciting agent.

The policy thereupon written was for the principal sum of $1,000, not the $1,500 requested, but the indemnity was

also stated to be $100 per month. It called for a premium of $33 per year, and mentioned a "deposit for survivorship fund" in the sum of $2 and a "policy fee" of $5.

It is insisted that the insurance liability was in the sum of $500, not the $1,500 asked for or the $1,000 mentioned in the policy. Without the knowledge of the insured or his beneficiary, the company's office records uniformly dealt with Taylor's insurance as for $500. Even the original application turned in by Taylor had been changed. Where it had requested a policy for $1,500 the amount was changed in pencil to $500, and the $50 premium was similarly lowered to $38. Of these penciled changes Taylor had not been advised. They had both been made in the Denver office by one Coles, then vice-president and general manager of the company, who had personally solicited the business from Taylor. The company's rate sheet, not made known to Taylor, provided for a premium of $33 for a $500 liability, but it also provided for an increase to $1,000 liability upon additional payment of only $1.50, and for an increase from a $500 liability to one of $1,500 upon payment of only $3.00.

According to Coles, Taylor "understood" that the company "would have to reinsure any amount over $500," but Coles told him he thought he could get reinsurance. After the $1,000 policy had been delivered, Coles informed Taylor that the policy had been reduced because of his occupation and "that it was impossible to give him as much as he had expected." Nothing was said, however, to throw doubt upon the policy as a contract for payment of $1,000 as stated therein, in the event of accidental death. Taylor was justified in accepting the policy as valid for $1,000.

The main contention in favor of reversal is that under Compiled Laws 1921, page 837, section 2563, (b) ('35 C.S.A., vol. 3, page 676, c. 87, section 133, [b]) the company, being a mutual insurance company, had no authority, in June, 1935, to issue any one policy for a greater principal sum than 20 per cent of the company's

admitted assets, which then stood at $3,155.93. This statutory provision, however, does not automatically vitiate policies exceeding the prescribed maximum. It is not claimed that Taylor knew anything about the company's financial setup. Such a violation of the insurance code may perhaps incur penalties for an offending company and its officers, but, in the absence of a clear statutory requirement, it cannot be allowed to destroy contractual obligations merely because technically the company's act is ultra vires.

The rate sheet of the company permits the issuance of a $1,000 policy to one of Taylor's classification. It does not appear whether any part of the original $50 premium payment was refunded or not. In any event, the case was carefully tried both as to the facts and as to the law.

██ Upon the foregoing facts it is clear that Taylor's contract was for the principal sum of $1,000, and consequently his beneficiary was entitled to the $1,000 judgment rendered below on the jury verdict in her favor, unless there is merit in one or both of two other contentions put forth by the company. One is to the effect that the district court erred in deciding against the company the issue raised by the latter's supplemental answer and cross complaint, which asked for a reformation of the policy so as to reduce the principal sum to $500. The trial court, sitting without a jury for the purpose of trying this equity issue, found in favor of Mrs. Taylor and declined to decree a reformation. There was no error therein, in view of the facts above recited. The other contention is that it was error to enter judgment for the full $1,000 and to provide for its payment in monthly installments of $100; it being earnestly argued that the court had no power to enter judgment for more than the single installment overdue when the action was commenced. The company suffered no prejudice. It was within the spirit and the letter of the contract to enter judgment for the full amount and to extend the time of paying the subsequent installments as agreed between the parties. The situation

is wholly unlike cases where, as in leases with payments of rent at stated intervals, the very question of liability is a separate one in relation to each periodical payment, dependent upon facts as they develop in the future. Here, on the contrary, the liability becomes fixed once for all, the installments must stand or fall together. Incidentally it may be noted that under the contract before us the last of the monthly indemnity payments was due prior to the end of the year 1936.

Judgment affirmed.

MR. CHIEF JUSTICE BURKE and MR. JUSTICE YOUNG concur.