## No. 19,019.

FREDERICK W. SEGELKE *v.* GLENN E. KILMER, ET AL.

(360 P. [2d] 423)

Decided March 6, 1961. Rehearing denied April 3, 1961.

Messrs. HAFFKE & JOHNSON, Mr. FRED M. WINNER, Mr. WARREN O. MARTIN, for plaintiff in error.

Messrs. SANDHOUSE & SANDHOUSE, for defendants in error Glenn E. Kilmer and Bessie Kilmer.

Messrs. MORAN, REIDY & VOORHEES, for defendants in error Max L. Krueger, et al.

*In Department.*

Opinion by MR. JUSTICE MCWILLIAMS.

PRIOR to April 18, 1944, Bessie Kilmer, who was plaintiff in the trial court, owned 326 acres of unencumbered farm land situated in Logan County, State of Colorado. On that date she entered into an oil and gas lease with The Ohio Oil Company covering the entire 326 acres. This lease was for a term of ten years, and provided, inter alia, that the lessee should pay the lessor the proceeds from one-eighth (⅛) of all oil and gas produced and sold from the leased premises at the prevailing market price therefor at the wells and further provided for the payment of fifty cents (50¢) per acre as "rental"

for the privilege of deferring drilling beyond the first year of the lease, and payment of a like sum for the privilege of deferring actual drilling for like annual periods thereafter. The lease also contained a so-called "entirety clause" which provides as follows:

"If the leased premises shall hereafter be owned in severalty, or in separate tracts, the premises, nevertheless, shall be developed and operated as one lease, and all rents and royalties accruing hereunder shall be treated as an entirety and shall be divided among and paid to the separate owners in the proportion that the acreage owned by each such owner bears to the entire leased acreage. There shall be no obligation on the part of the lessee to offset wells on separate tracts into which the land covered by this lease may be hereafter divided by conveyance, lease or otherwise or to furnish separate measuring or receiving tanks. It is agreed that in the event this lease shall be assigned as to a part or parts of the above described lands and default shall be made in the payment of the proportionate part of the rent due upon any such part, such default shall not operate to defeat or affect this lease insofar as it covers a part or parts of said land upon which payments of said rentals shall be made."

On March 6, 1947, Bessie Kilmer conveyed by warranty deed for a consideration of $1,000 approximately 160 acres of the leased land to her brother, Cecil Nicholson, who was a defendant in the trial court. This warranty deed provided that title to the premises described in the deed was " * * * subject to taxes for the year 1947 and thereafter, encumbrances of record, and an Oil and Gas Lease to The Ohio Oil Company in which grantor reserves to herself all *cash yearly lease payments* to be made in the future under said lease, and reserving to herself one-half of all gas, oil and mineral rights on the premises here passed." (Emphasis supplied.) This deed was recorded on March 17, 1947, and the oil and gas lease was recorded on April 16, 1947.

On April 26, 1947, Cecil Nicholson and Frederick W. Segelke, another defendant in the trial court, entered into a contract to exchange properties and on May 1, 1947, Cecil Nicholson conveyed to Frederick W. Segelke by warranty deed 120 acres of the land which he in turn had purchased from his sister, Bessie Kilmer. This deed provided, inter alia, that the property was conveyed " * * * excepting one-half of all gas, oil and mineral rights reserved to one Bessie Kilmer in that certain deed recorded in Book 359 at page 373 in the office of the County Clerk and Recorder of Logan County, Colorado, with all its appurtenances, and warrant the title to the same, subject to an Oil and Gas Lease dated April 18, 1944, recorded in Book 363 at Page 188 in the office of the County Clerk and Recorder of Logan County, subject to general taxes for 1947, payable in 1948, and subject to any legal reservations contained in the deed of Bessie Kilmer to grantor herein, dated March 6, 1947, and recorded in Book 359 at page 373 aforesaid."

In 1950 oil was discovered in producing quantities on that part of the original 326 acres which had been retained by Bessie Kilmer and thereafter from 1950 to 1956 The Ohio Oil Company, or its assignee, the Trigood Oil Company, paid the entire one-eighth royalty to Bessie Kilmer and her assignees. However, on or about November 1, 1955, the Pure Oil Company began purchasing the oil produced on Bessie Kilmer's property and after its attorney had examined the Oil and Gas Lease and the two warranty deeds here involved, it stopped all royalty payments inasmuch as it appeared that Nicholson and Segelke were entitled to a pro-rata share of the one-eighth royalty. Whereupon Bessie Kilmer brought this action seeking reformation of the two warranty deeds referred to supra, and more specifically requesting that each deed be "reformed to provide that the grantee in said warranty deed shall receive the royalty as provided in the Oil and Gas Lease hereinabove described *only* from the oil and gas produced from the

lands specifically described in said warranty deed, notwithstanding the recital in said deed that the conveyance is subject to the described Oil and Gas Lease."

Upon trial it was established that neither Bessie Kilmer, Cecil Nicholson nor Frederick W. Segelke had any actual knowledge that the Oil and Gas Lease contained an "entirety" clause until late in 1955, although all knew that the property conveyed by Bessie Kilmer to Nicholson was subject to the lease. It is the theory of Bessie Kilmer when she conveyed 160 of her 326 acres to her brother, it was their mutual intention to in effect negate or nullify the entireties clause in the Oil and Gas Lease, even though neither had any actual knowledge that the lease contained an entireties clause, because each specifically intended that Nicholson should only be entitled to share in the royalty on oil produced on the 160-acre tract acquired by him and that neither intended that Nicholson was to get a pro-rata share of the royalty on oil produced on the land retained by Bessie Kilmer. It was similarly urged that such was also the mutual intent of Nicholson and Segelke when Nicholson conveyed the 120-acre tract to Segelke. The trial court in detailed findings approved and adopted the theory of Bessie Kilmer and ordered reformation as prayed in the complaint.

The only issue to be determined is whether the trial court was correct in ordering reformation of the two warranty deeds. A careful examination of the evidence leads to the inescapable conclusion that this is not a case which permits reformation and that the trial court in so doing committed error.

 Changing the terms of any written instrument by reformation is a solemn matter and such equitable relief is granted only when the evidence is clear, unequivocal and indubitable. In support of this proposition the Court of Appeals in *Wilson v. Morris*, 4 C.A. 242, 36 Pac. 248, at page 245 of the state report said: " * * * it is plain to be seen that, whenever a party un-

dertakes to avoid the effect of an instrument which he has signed and sealed, he undertakes a task of exceeding difficulty. He can only discharge the burden which is cast upon him by production of the clearest, most satisfactory and indubitable proof that the defendant is without right to enforce the contract he holds. According to the authorities, there is no difference between the two classes of cases — that is, the one where a party seeks to reform a contract to express the actual intention of the parties, and the one where he seeks the cancellation of an instrument as an entirety, because it is not an agreement which the defendant has the right to enforce."

Before proceeding to examine the evidence relied upon for reformation it is well to recognize certain fundamental principles pertaining to reformation. Ignorance of a fact is not, standing alone, grounds for reformation. Mutual mistake of fact is grounds for reformation *if* the written instrument because of the mutual mistake does not express the true intent or agreement of the parties. Reformation of a written instrument is only permitted on the supposition that it does not represent the true agreement of the parties and is ordered so as to effectuate their true intent. There can be no reformation unless there is a preliminary or prior agreement, either written or verbal between the parties, furnishing the basis for rectification, or to which the instrument can be reformed. In other words, the alteration sought to be made to the written instrument must be one to which the parties have earlier assented and which by mistake was either omitted or incorrectly set forth in the final instrument. A court should not, in the guise of reformation, write into a written agreement a term or provision which was not earlier agreed to by the parties themselves. See 76 C.J.S., p. 342, 346 and 348; *Mike Occhiato Mercantile Co. v. Allemannia Fire Insurance Co. of Pittsburg*, 98 F.S. 888; *Moddelmog v. Cook*, 138 Colo. 152, 330 P. (2d) 1113; *Olinger Mut.*

544

*Benefit Assn. v. Christy,* 139 Colo. 425, 342 P. (2d) 1000; *Harley v. Magnolia Petroleum Co.,* 378 Ill. 19, 37 N.E. (2d) 760; 137 A.L.R. 908 and 45 A.J. 609.

■ The trial court held that the evidence was not only "clear, unequivocal and convincing" but "conclusive" that none of the parties intended that the two deeds should include or be subject to the entireties clause. Careful examination of the testimony of Bessie Kilmer, Cecil Nicholson and Frederick W. Segelke reveals nothing of any real substance to support such a conclusion. All three testified to substantially the same effect, namely that each *knew* that the conveyance was subject to an oil and gas lease to The Ohio Oil Company, although none knew all of the terms of the lease. Each testified that the warranty deeds as written truly represented the understanding and agreement of the parties thereto. It is undisputed that none of the parties to the conveyances was aware that an entireties clause was in the oil and gas lease until 1956. What provision would have been made and inserted in the warranty deeds had the parties known in 1947 that an entireties clause was in the oil and gas lease we do not know, for the obvious reason that the parties themselves had *no* meeting of the minds on this point. This Court should not sanction, under the guise of reformation, the insertion in the deeds of a new term or provision which was never even in the minds of the parties, let alone assented to by them.

■ The trial court laid considerable emphasis upon the fact that from 1950 to 1956, although both Nicholson and Segelke knew that oil was being produced on the land retained by Kilmer, neither made any demand to share in the one-eighth royalty, and held that such conduct clearly established that the parties themselves did not intend the warranty deed to be subject to the entireties clause of the oil and gas lease. This Court in *Corlett v. Cox,* 138 Colo. 325 at p. 330, 339 P. (2d) 619, said: "Where the conduct of the parties is relied upon as showing the practical construction which they had

placed upon the contract, such conduct must be harmonious, uniform and free from ambiguity." The conduct here relied on is certainly not "free from ambiguity." Segelke's and Nicholson's failure to demand their pro-rata share in the one-eighth royalty, undoubtedly results from the undisputed fact that they did not know of their right to so share. Once they became acquainted with that fact demand was soon forthcoming! The failure of Nicholson and Segelke to make a demand upon Bessie Kilmer for their pro-rata share of the one-eighth royalty from 1950 to 1956 does not "conclusively" establish that in 1947 the parties intended to convey the premises involved subject to the oil and gas lease, but free from its entirety clause.

In *Anderson v. Juanita Coal & Coke Co.*, 83 Colo. 562, 267 Pac. 400, this Court, in reversing the judgment of the trial court which as here had ordered reformation, stated: "The evidence relied upon to support it [reformation] does not either in quantity or quality meet the well-settled requirements prescribed in cases of reformation." The same observation could well be made in the instant case. There was never any meeting of the minds of the parties with respect to the entireties clause of the lease, and certainly nothing to indicate the warranty deeds were intended to be free of the operation of such clause. In the absence of such understanding and intent, reformation is improper. To order reformation under these circumstances is to rewrite, not to reform, the instruments.

The judgment of the trial court not only decreed reformation but also "denied and disallowed" all of the many counterclaims and cross-complaints filed by defendants, third party plaintiffs and third party defendants, for the assigned reason that by ordering reformation, all such claims became "moot."

The judgment decreeing reformation, being erroneous, is reversed and the cause remanded with directions to dismiss the complaint, and to conduct such further pro-

ceedings with respect to the cross-complaints and third party complaints as may be necessary to determine the rights of all parties.

MR. CHIEF JUSTICE HALL and MR. JUSTICE DAY concur.