Gerald R. WOODRUFF, individually and as surviving spouse of decedent Sandra Lynn Woodruff, Plaintiff-Appellee,

v.

Delmar R. O'DELL, Defendant,

and

American Family Mutual Insurance Company, Garnishee-Appellant.

No. 83CA0471.

Colorado Court of Appeals,
Div. II.

Jan. 17, 1985.

Rehearing Denied Feb. 21, 1985.

Certiorari Denied May 20, 1985.

Keene, Munsinger & Stuckey, Sharon A. Sievers, Kenneth L. Keene, Jr., Denver, for plaintiff-appellee.

Littell & Dickinson, Gilbert A. Dickinson, Denver, for garnishee-appellant.

STERNBERG, Judge.

Disposition of this appeal hinges on whether the insurance contract between the garnishee, American Family Mutual In-

surance Company, and the defendant, Delmar R. O'Dell, consists of the policy as issued, containing several blank pages, or whether it consists of the insurer's standard contract. We agree with the trial court's conclusion that the policy as issued controls, and therefore affirm the judgment.

The automobile in which the plaintiff, Gerald R. Woodruff, and his wife were driving was struck by a vehicle owned by defendant Delmar O'Dell's son and driven by Delmar O'Dell with permission of his son. Mrs. Woodruff died as the result of injuries sustained in the accident and plaintiff filed suit against Delmar O'Dell. O'Dell's insurer, American Family Insurance Company, denied coverage. The insurer based its denial on the restrictive definition of a non-owned automobile which appeared in its standard policy. That standard policy language defined a "non-owned automobile" in such a way that there was no coverage when the insured was driving an automobile owned by a member of the same household, as was the situation with the O'Dells.

When O'Dell purchased the policy he requested "full coverage." The insurer's agent filled out an application which reflected the coverage limits. O'Dell testified that he understood "full coverage" to mean he was covered when driving someone else's car. When the policy arrived in the mail, O'Dell put it away after a cursory review.

After the insurer denied coverage, however, O'Dell examined the policy and discovered that the restrictive definition of the term "non-owned automobile" upon which the denial of coverage was based did not appear in his policy. Indeed, of approximately 14 pages contained in the policy, six were blank. The definition relied upon by the insurer would have appeared on one of the blank pages, and, thus, was not in the document issued to O'Dell.

Woodruff and O'Dell stipulated to entry of judgment in the amount of $90,000, and Woodruff brought a garnishment action against the insurer. When the insurer denied having any assets belonging to O'Dell, Woodruff traversed this response. Following a hearing, the trial court found that the policy actually issued to O'Dell accurately reflected the original agreement and was a binding contract as written. It therefore ruled that the policy did not exclude coverage for O'Dell when he was driving his son's car. Consequently, the court allowed garnishment of the insurer for the amount of the judgment entered against O'Dell.

On appeal, the insurer contends that its standard form policy which did not provide coverage under these circumstances was actually the contract between the parties. We disagree.

■ An insurance policy delivered to an applicant which corresponds to the application and declaration sheet filled out after actual review and negotiations is the final and binding contract between the parties. 44 *C.J.S. Insurance* § 266; *see U.S. Mutual Insurance Co. v. Taylor,* 100 Colo. 516, 69 P.2d 245 (1937). Under the terms of the policy delivered here, O'Dell would be covered when driving a non-owned automobile, and although the insurer intended to define "non-owned automobile" to exclude coverage for an automobile owned by a resident of the same household, that restrictive definition did not appear in O'Dell's policy.

■ Under the circumstances, we agree with the trial court that the policy, as delivered, does reflect the terms discussed and agreed to and, thus, it is the contract between the parties. Furthermore, the term "non-owned automobile," construed according to its plain, ordinary and customary meaning, *see Gulf Insurance Co. v. Colorado,* 43 Colo.App. 360, 607 P.2d 1016 (1979), includes O'Dell's son's car, and therefore, the policy covered O'Dell for this accident.

Contrary to the insurer's next assertion, the trial court was correct in not granting reformation of the policy on the basis of mutual mistake because of scrivener's error.

■ If there has been a mutual mistake a court may reform a written insurance contract to conform to the parties' true agreement. *Atchison v. City of Englewood,* 193 Colo. 367, 568 P.2d 13 (1977). However, a mistake that will justify reformation must be one which is reciprocal and common to both parties, and both parties must labor under the same erroneous conception with respect to the terms and conditions of the instrument. *Smith v. Anderson,* 121 Colo. 175, 214 P.2d 366 (1950).

■ Here, the trial court found that there was no mutual mistake, just a mistake by the insurer in the issuance of the policy. *See U.S. Mutual Insurance Co. v. Taylor, supra.* That finding has support in the record and, thus, is binding on review. *Page v. Clark,* 197 Colo. 306, 592 P.2d 792 (1979).

The insurer's reliance upon *Gullion v. Plymale,* 168 Colo. 245, 450 P.2d 650 (1969) and related cases as requiring reformation for a scrivener's error is misplaced. In those cases the parties were in agreement as to what the instrument should have said. There was no such underlying agreement in this case.

Here, the insurer seeks to have the contract reformed not to reflect what was actually agreed to; rather, it seeks to add a restrictive definition which it intended, but neglected, to include in the policy. The trial court properly found this mistake on the part of the insurer as insufficient grounds for reformation. *See Smith v. Anderson, supra; B.L. Ivey Construction Co. v. Pilot Fire & Casualty Co.,* 295 F.Supp. 840 (N.D.Ga.1968).

Although the insurer is correct in asserting that there was a mutual mistake in the sense that neither party intended a contract with blank pages to be delivered, nevertheless, inasmuch as there was no indication of the parties' agreement on the terms to be included on those pages, that mistake is not the type that can justify reformation. *See Smith v. Anderson, supra.*

The judgment is affirmed.

ENOCH, C.J., and KELLY, J., concur.