MARYLAND CASUALTY
COMPANY, Petitioner,

v.

BUCKEYE GAS PRODUCTS
COMPANY, INC.,
Respondent.

No. 89SC344.

Supreme Court of Colorado,
En Banc.

Sept. 10, 1990.

Weller, Friedrich, Ward & Andrew, J. Mark Smith, Dan W. Hotsenpiller, Denver, for petitioner.

Hall & Evans, Alan Epstein, Thomas N. Alfrey, David P. Cain, Kathleen G. Lanterman, Denver, for respondent.

Justice ERICKSON delivered the Opinion of the Court.

We accepted certiorari to review an unpublished court of appeals decision that reversed the trial court's judgment ordering reformation of an insurance endorsement and restitution in favor of petitioner Maryland Casualty Company. The trial court found that, due to a scrivener's error, the endorsement that added the respondent, Buckeye Gas Products Company, Inc., as an additional insured provided for retroactive coverage contrary to the intentions of the parties and ordered that the endorsement be reformed to provide coverage beginning on the date Maryland agreed to add Buckeye as an additional insured. Because, after reformation, the personal injury claims made against Buckeye, and defended by Maryland under a reservation of rights, arose before the effective date of the endorsement, Maryland was awarded restitution in the settlement amount of $175,000. The court of appeals held that there was no agreement between Maryland

and Buckeye as to the date coverage was to commence and therefore found there was no basis for reformation. We reverse and remand with directions to reinstate the judgment of the trial court.

## I.

Buckeye is a distributor of gas products and, pursuant to an agreement entered into in 1977, supplied propane to Nolan's RV Center (Nolan's) for resale. According to the terms of the agreement, Nolan's was to maintain insurance in conformance with Buckeye's reasonable requirements and to provide Buckeye with certificates of insurance to verify compliance with Buckeye's requirements. In 1978, Buckeye adopted a company policy that required its dealers to name Buckeye as an additional insured on their liability policies. From 1978 to 1983, Buckeye was not carried as an additional insured on Nolan's liability policy due to an oversight on the part of Buckeye.

In 1983, Orlando Adelman, who was recently hired as Buckeye's insurance coordinator, discovered that Nolan's certificate of insurance for the period from August 1, 1982, to August 1, 1983, did not state that Buckeye was designated as an additional insured on Nolan's liability policy. In April 1983, Adelman requested that Nolan's insurance agent add Buckeye as an additional insured. Nolan's was insured at the time by Maryland under a policy that was effective from August 1, 1982 to August 1, 1983.

Nolan's insurance agent forwarded Buckeye's request to Maryland. On May 3, 1983, Maryland agreed to add Buckeye as an additional insured on Nolan's policy for a premium of $50. On May 31, 1983, an endorsement was issued formally designating Buckeye as an insured and provided that the endorsement was effective August 1, 1982 to August 1, 1983, the same period specified in the underlying policy.

In October 1983, Buckeye, together with Nolan's, was sued for personal injuries sustained in a propane explosion in September 1982. The propane was purchased from Nolan's and supplied by Buckeye. Neither Buckeye nor Maryland had knowledge of the accident when the endorsement was issued. Maryland, asserting that a mistake had been made in preparing the endorsement so that retroactive coverage was provided beginning August 1, 1982, undertook the defense of Buckeye in the personal injury action with a reservation of its rights. Upon Buckeye's request, Maryland paid $175,000 in settlement of the plaintiffs' claims against Buckeye.

Following settlement of the personal injury action, Maryland brought an action against Buckeye seeking reformation of the endorsement and restitution of the $175,000 paid in settlement together with the expenses incurred by Maryland in defending Buckeye. Trial was to the court. Adelman testified that he did not contemplate a specific date for the coverage to begin. Instead, he testified that he intended coverage to begin in accordance with Maryland's procedures and that his expectation was that coverage would begin either on the date of the letter requesting coverage or the date Maryland received the letter. Adelman specifically stated that he did not expect that coverage for Buckeye as an additional insured on Nolan's policy would be provided retroactive to August 1, 1982.

Leslie Grammer, the Maryland underwriter who handled Buckeye's request, testified that her records showed that Buckeye did not request retroactive coverage as an additional insured and that Maryland's procedures for backdating policies were not undertaken in this case. Grammer further testified that Buckeye was approved as an additional insured on May 3, 1983. Gene Sinkule, the commercial underwriting manager for Maryland's Denver office, testified that a request to backdate coverage for an additional insured was highly unusual and that such coverage would have to be specifically requested by the insured and the purpose for the request would have to be reasonable. In addition, the underwriter would have to determine if the insured had any knowledge of an existing claim or claims. Finally, backdating of coverage would have to be approved by the manager of underwriting or the branch

manager of the insurance company. Sinkule stated that none of the prerequisites for backdating coverage had occurred and that backdating policy coverage for eight months was unreasonable and would never be approved because of the potential liability exposure to the insurer.

The trial court found that there was an agreement to add Buckeye to Nolan's policy as an additional insured as of May 3, 1983, that the parties did not agree to backdate the effective date of the endorsement to August 1, 1982, and that Maryland's company policy and Buckeye's expectations were that coverage would begin at the time Maryland agreed to designate Buckeye as an additional insured. Because the effective date of the endorsement as it was issued represented a mutual mistake, the court ordered reformation of the endorsement to provide coverage starting May 3, 1983, the date Maryland agreed to provide coverage to Buckeye as an additional insured. Since the claims against Buckeye arose before the effective date of the reformed endorsement, the trial court ordered Buckeye to reimburse Maryland $175,000, the amount paid by Maryland in settlement of the personal injury claim. The trial court denied an award of expenses incurred by Maryland in defense of Buckeye on the grounds that the reasonableness and necessity of the costs were not adequately established at trial.

Buckeye appealed. The court of appeals reversed that part of the trial court's judgment that ordered reformation of the endorsement and payment of restitution to Maryland on the grounds that there was no explicit agreement from which to establish the actual intentions of the parties. As to the trial court's denial of restitution of the cost of defense, the court of appeals affirmed.

## II.

■ The issue is whether the record supports the trial court's order of reformation. We must determine whether the record contains sufficient evidence of the parties' intentions to permit reformation of the endorsement. *See Page v. Clark*, 197 Colo.

306, 313, 592 P.2d 792, 796 (1979) (trial court's factual findings must be upheld on appeal unless so clearly erroneous as to be unsupported by the record).

■ Reformation of a written instrument is appropriate only when the instrument does not represent the true agreement of the parties and the purpose of reformation is to give effect to the parties' actual intentions. *Segelke v. Kilmer*, 145 Colo. 538, 543, 360 P.2d 423, 426 (1961). The evidence must clearly and unequivocally show that reformation is appropriate under the circumstances. *Atchison v. City of Englewood*, 193 Colo. 367, 372, 568 P.2d 13, 17 (1977). A mistake caused by a scrivener's error so that a written agreement does not correctly state the parties' actual intentions and expectations may be remedied by reformation. *Id.* However, a mutual mistake requires that both parties must "labor under the same erroneous conception in respect to the terms and conditions of the instrument." *Smith v. Anderson*, 121 Colo. 175, 181, 214 P.2d 366, 370 (1950); *see also Woodruff v. O'Dell*, 701 P.2d 112, 114 (Colo.App.1985).

In this case, the trial court found that an error had been made by the Maryland employee responsible for typing the endorsement and that the scrivener's error resulted in a mutual mistake as to the date when coverage for Buckeye as an additional insured was to commence. The finding of the existence of a mutual mistake is supported by evidence in the record and must be upheld on appeal. *Page v. Clark*, 197 Colo. at 313, 592 P.2d at 796.

■ An essential prerequisite to a court's power to reform a contract on the ground of mutual mistake is the existence of a prior agreement that represents the actual expectations of the parties and provides the basis upon which a court orders reformation. *Segelke*, 145 Colo. at 543, 360 P.2d at 426. A court may not, through reformation, impose liability based on a term of the contract that is contrary to the expectations of the parties and not the subject of their prior agreement. *Id.*

The trial court found that the expectations of both Maryland and Buckeye were that the effective date of the endorsement was to be the date of Buckeye's request for coverage or later. The court of appeals did not reject the trial court's factual findings regarding the intentions of the parties. Instead, the court of appeals, relying on *Woodruff v. O'Dell,* focused on the lack of a prior explicit agreement as to the exact date coverage was to begin. In *Woodruff,* the insurance policy, due to a mistake on the part of the insurer, contained several blank pages and left out a restrictive coverage definition that was inconsistent with the insured's request for "full coverage." *Woodruff,* 701 P.2d at 113. The court of appeals held that the record supported the trial court's finding of no mutual mistake because the insurer mistakenly left out pages imposing restrictions on coverage. *Id.* at 114. The insured did not know that the policy was not complete. *Id.* at 113–14.

Here, the trial court found that there was an agreement to add Buckeye as an additional insured prior to the time the endorsement was prepared. The prior agreement establishes a sufficient basis to support the order of reformation. Although the agreement did not expressly set forth the effective date of the endorsement, the circumstances surrounding Buckeye's request for coverage and Maryland's acceptance of the request make it clear that retroactive coverage was not intended by either party. Instead, Buckeye's insurance coordinator testified that he intended that coverage for Buckeye as an additional insured to commence as of the date of the request to be named an additional insured or later, according to Maryland company policy. It is undisputed that Maryland's procedures for backdating insurance coverage were not followed in this case. Buckeye did not request that retroactive coverage be provided and Maryland did not agree to afford such coverage. The trial court did not err by ordering reformation of the endorsement to provide for an effec-

tive date of May 3, 1983.[1] *See Atchison v. City of Englewood,* 193 Colo. at 372–73, 568 P.2d at 17–18 (reformation to delete provision that granted preemptive rights to heirs of grantors in violation of the rule against perpetuities was appropriate where the provision had not been agreed to by the parties).

## III.

The record supports the trial court's order of reformation and restitution. The court of appeals therefore erred by reversing the judgment of the trial court on the grounds that there was no explicit agreement regarding the effective date of endorsement. Accordingly, the judgment of the court of appeals is reversed and the case is remanded to the court of appeals with directions to reinstate the judgment of the district court.

---

1. Buckeye contends that May 3, 1983, has no significance with respect to the parties' intentions and expectations. However, May 3, 1983, was the date that Maryland agreed to provide coverage to Buckeye and reformation of the effective date of the endorsement to this date is consistent with the intentions of the parties and affords equity under the circumstances.