**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**August 31, 2005**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

CABS, INC., doing business as ZONE
CABS, INC., also doing business as
CENTENNIAL SEDANS, INC., and
PARATRANSIT RISK RETENTION
GROUP INSURANCE CO.,

      Plaintiffs-Counter-
      Defendants-Appellants,

      v.

HARTFORD INSURANCE GROUP,
HARTFORD FIRE INSURANCE
COMPANY, and HARTFORD
PROPERTY AND CASUALTY
INSURANCE COMPANY,

      Defendants-Counter-
      Claimants-Appellees.

No. 03-1452

(D. of Colo.)

(D.C. No. 01-M-1367 (MJW))

---

**ORDER AND JUDGMENT** *

---

Before **EBEL**, **O'BRIEN**, and **TYMKOVICH**, Circuit Judges. **

---

    * This order is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders; nevertheless, an order may be cited under the terms and conditions of 10th Cir. R. 36.3.

    ** Pursuant to the Court's February 4, 2005 Order granting Appellant's Unopposed Motion to Postpone Oral Argument, this cause is submitted without

(continued...)

The issues in this appeal are whether the district court erred in reforming an insurance policy and in dismissing various claims against The Hartford Insurance Group, et al. The underlying lawsuit was based on an insurance coverage dispute arising from an accident in Denver, Colorado, in which one of Zone Cabs' taxis injured a pedestrian. Cabs, Inc., the parent company of Zone Cabs, and Cabs' insurers, Hartford and Paratransit Risk, reached a settlement of the injured pedestrian's subsequent litigation. Hartford contributed $1,000,000 to the settlement, while Paratransit contributed over $600,000. Zone Cabs itself contributed $50,000.

After the settlement was executed, Cabs, Zone Cabs and Paratransit (collectively "Plaintiffs") demanded that Hartford reimburse them for a portion of their settlement payments and other costs of defense. Hartford refused. Hartford claimed it was not obligated to provide any reimbursement despite its participation in the settlement agreement because its insurance policy did not cover the operations of Zone Cabs. Instead, Hartford insisted its insurance policy

---

**(...continued)
oral argument. After examining the briefs and the appellate record, this three-judge panel has determined unanimously that oral argument would not be of material assistance in the determination of this appeal. *See* Fed. R. App. P. 34(a); 10th Cir. R. 34.1(G).

only covered another operating division of Cabs named Centennial Sedans, Inc., a luxury limousine service.

The district court conducted a bench trial to determine the scope of Hartford's insurance policy. After taking evidence, the court ordered the policy reformed to make explicit that coverage extended only to Centennial's limousines and not to Zone Cabs' taxis. The court also granted summary judgment to Hartford on Plaintiffs' claim under the Colorado Consumer Protection Act, Colo. Rev. Stat. § 6-1-101, *et seq.* (2001), and a claim for treble damages under the former Colorado Auto Accident Reparations Act, Colo. Rev. Stat. § 10-4-708(1.8) (2001) (repealed 2003). Plaintiffs appeal arguing that both reformation and summary judgment were improper.

We have jurisdiction under 28 U.S.C. § 1291, and affirm.

**Background**

**I. The Plaintiffs**

Cabs, Inc. was a licensed and registered Colorado motor vehicle carrier regulated by the Colorado Public Utilities Commission (PUC). Cabs owned Zone Cabs, Inc., a taxicab business dating back to the 1940s that operated in excess of 100 taxis. Cabs also owned Centennial Sedans, Inc., a luxury sedan service started in 1995 that operated up to fourteen limousines. Though both were owned by Cabs, Centennial and Zone Cabs functioned as independent businesses with

-3-

different addresses and management. Zone Cabs and Centennial, however, did operate under the same tariff issued by the PUC (the tariff listed the tariff-holder as "Cabs, Inc. dba Zone Cabs, Inc. and/or Centennial Sedans, Inc"). Paratransit Risk Retention Group Insurance Company was a mutual insurance company owned and operated by taxicab fleet owners. Paratransit provided liability insurance coverage to Zone Cabs at the time of the accident.

**II. The Insurance Policies**

The circumstances underlying this litigation are a result of Centennial's acquisition of liability insurance for its limousine business from Hartford in 1998. Hartford initially named "Cabs, Inc. d/b/a Centennial Sedans, Inc." as the insured and provided coverage for the period December 19, 1998 to December 19, 1999. The policy included property, general liability and auto coverage.

The policy specifically covered ten listed vehicles, all of which were limousines, since Centennial neither owned nor operated any taxis. The policy further detailed coverage in a section entitled "Schedule of Coverage and Covered Autos." For liability coverage, the policy included the notation "01" for covered autos and included a $1 million cap per accident. The notation "01" represented coverage for "any auto" owned and operated by the named insured. For personal injury protection (PIP) or equivalent no-fault coverage, the policy included the notation "05," which represented coverage for autos owned by the insured and

-4-

required to have no-fault coverage, including those acquired after the policy became effective.[1]  Total annual premiums for the policy were $23,879, including $581 for commercial property coverage, $22,265 for commercial auto coverage, and $1,033 for commercial general liability coverage.

Centennial's procurement of insurance from Hartford became complicated when Centennial's broker, Stewart Levin, attempted to submit proof of insurance to the PUC as required by Colorado law for tariffed motor vehicle service carriers.  *See* Colo. Rev. Stat. § 40-16-103 (1985).  Under PUC regulations, if carriers do not submit the original insurance policy as proof of insurance, they must submit a form titled "Form E – Uniform Motor Carrier Bodily Injury and Property Damage Liability Certificate of Insurance."  *See* 4 Colo. Code Regs. § 723-31-12.3 (2001).  Proof of insurance must be filed "with the exact name, initials, corporate and trade name (if any), and address as shown in the Application or records of the Commission."  *Id.* at § 723-31-12.3.1.

The Form E initially submitted identified the insured as "Cabs, Inc. dba Centennial Sedans, Inc."  Because the tariff under which Centennial operated, however, also listed Zone Cabs as a "d/b/a," the PUC returned the form to Centennial with a letter requiring "that the named insured on the policy . . . had to

---

[1] It is uncontested that Colorado law required both Centennial's limousines and Zone Cabs' taxis to have no-fault insurance.  *See* Colo. Rev. Stat. § 10-4-705 (2001) (repealed 2003).

be in the exact name of the company listed on the PUC tariff for that company." Centennial forwarded the letter to Levin, asking him to make the requested change and resubmit the form. On December 18, 1998, a new Form E was filed in accordance with the tariff, stating that Hartford had issued a complying policy to "Cabs, Inc., dba Zone Cabs, Inc., and/or Centennial Sedans, Inc.," which the PUC subsequently approved. Contemporaneously, Hartford also produced Common Declaration Pages for the insurance policy identifying the named insured as the same listed on the revised Form E.

In producing the Common Declaration Pages, Hartford did not explicitly change the representations regarding coverage in the agreement, nor did it increase the premiums charged. However, including Zone Cabs as an additional "doing business as" designation meant that the policy language regarding the scope of coverage could be fairly read to include taxis owned by Zone Cabs. In effect, by adding "dba Zone Cabs" to the named insureds in the contract, the benefits running to Centennial under the prior version now appeared to also extend to Zone Cabs.

During the period at issue, Cabs and Zone Cabs had other insurance coverage. In August 1998, Paratransit issued a policy to Cabs specifically covering the Zone Cabs operation. The policy covered Zone Cabs' taxi fleet of over 100 vehicles and charged $108,946 in annual premiums for the 1998–99

policy year. In addition, however, the policy included an excess coverage exclusion, which provided "[i]f, but for the insurance afforded by this policy, the Insured would have other insurance against a loss otherwise covered hereby, the insurance afforded by this policy shall be excess over such insurance." The Form E filed with the PUC to reflect the Paratransit coverage also listed the named motor carrier as "Cabs, Inc. dba Zone Cabs, Inc. and/or Centennial Sedans, Inc."

### III. The Accident

In February 1999, Anh Lan Nguyen was seriously injured when struck by a Zone Cabs taxi on a Denver street. Through a conservator, Nguyen sued Cabs, Zone Cabs, and the driver of the taxi for personal injuries. Cabs and Zone Cabs sought insurance coverage from Paratransit. In May 2000, they also asked Hartford to provide defense costs and indemnity coverage on the Nguyen claim based on the inclusion of Zone Cabs as a named insured on the policy issued by Hartford to Centennial. Hartford denied coverage.

Hartford, however, later offered to participate in a settlement agreement with Nguyen because of concern that Plaintiffs and Nguyen might otherwise enter into a *Bashor*-type agreement.[2] In August 2000, Hartford sent a settlement offer

---

[2] "A *Bashor* agreement is a settlement reached between opposing parties after a judgment has been obtained against the defendant. The prevailing party agrees not to execute on the judgment in exchange for the defendant's agreement not to appeal the judgment and instead to pursue claims against third parties (and
(continued...)

to Plaintiffs, indicating a willingness to settle "all claims that the Nguyens may have against Cabs, Inc." for $1 million. Hartford partially conditioned the offer as to Cabs and Paratransit:

> this offer may not be viewed or used as a waiver of any policy defenses or claims that Hartford may have against Cabs, Inc. or Paratransit (with, of course, the exception of any claim for reimbursement of the settlement amount paid to the Nguyens). In essence, the offer is a "one shot deal," and Hartford reserves the right to assert any and all claims and defenses it may have, including all defenses against any other claims.

In October 2000, Hartford and Plaintiffs settled the Nguyen claim. Hartford contributed $1 million, the limit of its liability policy. Paratransit also contributed its policy limit of $500,000. In addition, as an insurer for Cabs and Zone Cabs, Paratransit paid Nguyen in excess of $100,000 as mandated by the former Colorado Auto Accident Reparations Act (No-Fault Act), Colo. Rev. Stat. § 10-4-701, *et seq.* (2001) (repealed 2003), as well as defense costs, less a $50,000 deductible paid by Zone Cabs.

Plaintiffs then demanded that Hartford reimburse them for these no-fault payments and defense costs. This litigation ensued.

---

[2](...continued)
share any recovery with the original plaintiff)." *Stone v. Satriana*, 41 P.3d 705, 707 n.2 (Colo. 2002) (citing *Northland Ins. Co. v. Bashor*, 494 P.2d 1292 (Colo. 1972)).

**IV. The Litigation**

In June 2001, Plaintiffs filed suit against Hartford in Colorado state court, seeking to recover the no-fault sums paid to Nguyen, treble and punitive damages, and defense costs based on claims of equitable subrogation or reimbursement, insurance bad faith, breach of contract, and violation of the Colorado Consumer Protection Act (CCPA). *See* Colo. Rev. Stat. § 6-1-101, *et seq.*; *id.* § 10-4-701, *et seq.* (repealed 2003). Hartford removed the case to federal district court based on diversity jurisdiction, 28 U.S.C. §§ 1332, 1446, and counterclaimed to have the insurance contract reformed to reflect the company's position that the policy was not intended to provide coverage for Zone Cabs' taxis. Hartford did not pursue reimbursement for the $1 million it contributed to the Nguyen settlement.

In February 2002, Plaintiffs filed a motion for summary judgment seeking a determination that the insurance policy at issue covered the entirety of the Nguyen claim, including the no-fault payments, and that they were entitled to be reimbursed for costs of defense. Hartford responded by filing a cross-motion for summary judgment on the reformation claim and, in the alternative, to have the court determine that Plaintiffs' claim for treble damages under the former No-Fault Act and the claim under the CCPA both lacked merit.

The district court denied Plaintiffs' motion as well as the portion of Hartford's cross-motion seeking reformation. The court, however, granted

summary judgment in favor of Hartford on Plaintiffs' claim for treble damages and the CCPA claim. Subsequently, the court bifurcated the remaining claims and held a bench trial on Hartford's reformation claim. In September 2003, the court ruled in Hartford's favor. The court held that, to the extent the policy purported to insure Zone Cabs' taxis and thereby make Hartford liable for the no-fault payments and the costs of defense, such representations resulted from a mutual mistake by the contracting parties, Centennial and Hartford, and did not represent their true contractual intent. Accordingly, the court ordered the contract to be reformed to reflect that the policy did not provide coverage for Zone Cabs' taxis. Thereafter, the court granted summary judgment to Hartford on the remaining claims.[3]

_____

[3] Plaintiffs initially filed their notice of appeal with this court between the time the district court ruled in Hartford's favor on the reformation claim and when the district court dismissed Plaintiffs' remaining claims on summary judgment. During that same time period, Hartford filed a motion in this court to have the appeal dismissed for lack of appellate jurisdiction, contending that the district court's disposition of the reformation claim did not constitute a final, appealable order because Plaintiffs' remaining claims had not been ruled on. The district court's subsequent grant of summary judgment on the remaining issues is sufficient to extinguish any concerns over our jurisdiction or the timeliness of the filing of the notice of appeal. *See Lewis v. B.F. Goodrich Co.*, 850 F.2d 641 (10th Cir. 1988) (en banc). Therefore Hartford's motion to dismiss the appeal is denied.

## Discussion

This case requires us to answer three questions. First, whether the district court erred in reforming the insurance policy. Second, whether the district court erred in granting summary judgment to Hartford on Plaintiffs' claim under the CCPA. Third, whether the district court erred in granting summary judgment to Hartford on Plaintiffs' claim under the No-Fault Act. Applying Colorado law, we find no error on the part of the district court.

### I. Contract Reformation

The district court ordered the insurance policy to be reformed to exclude coverage for Zone Cabs' taxis. The court based its order on the finding that Hartford had established by "clear and convincing evidence" that "[a]t all times, both Centennial Sedans, Inc. and the Hartford intended that Hartford's commercial automobile policy . . . provide coverage only for the limousines of Centennial Sedans, Inc., and not for the taxi cabs of Zone Cabs, Inc."

On appeal, Plaintiffs argue the district court's reformation order should be reversed for two reasons. First, they allege the evidence is insufficient to establish that Centennial and Hartford did not intend to insure Zone Cabs as part of Hartford's coverage of Cabs and Centennial. Second, they argue Hartford, by its actions, either affirmed or ratified the contract as written to include Zone Cabs as a named insured and is therefore precluded from seeking reformation.

## A. Standard of Review for Reformation

"We review a district court's choice of equitable remedies for abuse of discretion." *Roberts v. Colorado State Bd. of Agric.*, 998 F.2d 824, 826 (10th Cir. 1993). Contract reformation is such an equitable remedy. *See Clark v. State Farm Mut. Auto. Ins. Co.*, 319 F.3d 1234, 1242 (10th Cir. 2003); *Brennan v. Farmers Alliance Mut. Ins. Co.*, 961 P.2d 550, 556 (Colo. Ct. App. 1998). Furthermore, determinations as to the intent of contracting parties are questions of fact reviewed for clear error. *See Mile High Indus. v. Cohen*, 222 F.3d 845, 854 (10th Cir. 2000); *Ray L. Atchinson Constr. Co. v. Sossaman*, 717 P.2d 988, 989–90 (Colo. Ct. App. 1985). "A finding of fact is not clearly erroneous unless it is without factual support in the record, or if the appellate court, after reviewing all the evidence, is left with the definite and firm conviction that a mistake has been made." *Mile High*, 222 F.3d at 854 (citation omitted).[4]

---

[4] Relying on our statement in *Downriver Cmty. Fed. Credit Union v. Penn Square Bank*, 879 F.2d 754, 758 (10th Cir. 1989), that our review is de novo if "the availability of equitable relief depends upon an interpretation of law," Plaintiffs argue for de novo review because whether Hartford has made an adequate evidentiary showing to justify relief is a "mixed question of law and fact involving primarily a consideration of legal principles." Aplt. Br. at 15. We disagree. The district court's determination turned primarily on the factual question of the parties' intent. *See Rascon v. US West Commc'ns, Inc.*, 143 F.3d 1324, 1329 (10th Cir. 1998) (mixed questions of law and fact are reviewed de novo if they involve primarily a consideration of legal principles and under a clearly erroneous standard if the question is primarily a factual inquiry).

## B. The District Court Did Not Err in Reforming the Policy

Under Colorado law, "[r]eformation of a written instrument is appropriate only when the instrument does not represent the true agreement of the parties and the purpose of reformation is to give effect to the parties' actual intentions. The evidence must clearly and unequivocally show that reformation is appropriate under the circumstances." *Maryland Cas. Co. v. Buckeye Gas Prod. Co.*, 797 P.2d 11, 13 (Colo. 1990) (internal citations omitted); *see also Cont'l W. Ins. Co. v. Jim's Hardwood Floor Co.*, 12 P.3d 824, 827 (Colo. Ct. App. 2000). "Mutual mistake of fact is grounds for reformation *if* the written instrument because of the mutual mistake does not express the true intent or agreement of the parties." *Segelke v. Kilmer*, 360 P.2d 423, 426 (Colo. 1961). "An essential prerequisite to a court's power to reform a contract on the ground of mutual mistake is the existence of a prior agreement that represents the actual expectations of the parties and provides the basis upon which a court orders reformation." *Maryland Cas.*, 797 P.2d at 13 (citation omitted). As such, under the doctrine of contract reformation the concepts of the intent of the parties and mutual mistake are interrelated. Where the written instrument does not reflect the true intent of the contracting parties, then the contrary intent reflected in the written instrument can be said to have resulted from a mutual mistake. Conversely, where the written

instrument does reflect the true intent of at least one of the parties, then no mutual mistake occurred.

1.

Having reviewed the record, we affirm the district court's reformation order. We agree with the district court that (a) the contracting parties, Centennial and Hartford, never intended to insure Zone Cabs' more than 100 taxis, and (b) any representation to the contrary resulted from a mutual mistake regarding the impact of including Zone Cabs as an additional "doing business as" designation in the insurance agreement. A brief summary of the evidence confirms the court's conclusions.

*Centennial's General Manager.* Brian Howard, Centennial's former general manager and the individual in charge of procuring its insurance, testified in his deposition that he had no intention of insuring Zone Cabs or its taxicabs, nor did he intend to include Zone Cabs' taxis in Centennial's policy. He further testified that he did not intend, nor did he communicate that he intended, to change the scope of coverage when he asked the insurance broker to alter the Form E after the PUC rejected the initial filing. In addition, Howard testified he did not think the policy would provide coverage for the Nguyen accident because "the only thing that Hartford was insuring was our limousine cars." Regarding the relationship between Zone Cabs and Centennial in the procurement of

insurance, Howard made clear he was not responsible for obtaining insurance for Zone Cabs  and he believed Zone Cabs had its own insurance during the period at issue.

*Hartford's Sales Representative.*  Jean Mullahy, a sales representative for Hartford, stated in her affidavit that "[i]t was never the intention of The Hartford to insure Zone Cabs, taxi cabs, or taxi operations" under the policy and that Hartford's records showed Howard requested coverage for Centennial's limousines, not for Zone Cabs' taxis.

*Centennial's Insurance Broker.*     Stewart Levin, the insurance broker, testified in his deposition at length regarding issuance of the initial version of the policy and the circumstances surrounding the revised Form E filing.  Specifically, he testified Centennial never asked him, nor did he intend, to procure insurance for Zone Cabs or its taxis.  He also testified that he understood Hartford did not intend to insure Zone Cabs, did not want to insure any taxi cab operations in Colorado, and that he took steps to assure Hartford that Howard sought coverage for limousines, not taxis.

With respect to the revised Form E and inclusion of Zone Cabs as an additional "doing business as" designation in the policy, Levin testified the changes were made to "facilitate the filing requirements of the PUC, not to include [Zone Cabs'] exposures in our policy," that it was neither his nor

Howard's intent to expand coverage beyond Centennial's limousines in completing the revised Form E, and that he did not inform Hartford that filing the revised Form E and including Zone Cabs as a named insured could have "included exposures not contemplated in the original submission and the original policy" because it did not occur to him. Finally, Levin testified that any failure to alter the policy to make clear that coverage did not extend to Zone Cabs was a "technical error" and, to the extent the policy could be read to cover taxicabs, such a reading did not represent Howard's nor Hartford's intent.

2.

Despite this evidence, Plaintiffs claim the record does not adequately support the district court's factual determination that Centennial and Hartford did not intend to insure Zone Cabs. Put another way, Plaintiffs challenge the district court's finding that any representations in the insurance agreement indicating coverage for Zone Cabs resulted from a mutual mistake by Centennial and Hartford as to the effect of adding Zone Cabs to the policy.

As to Centennial, Plaintiffs argue the district court failed to consider statements made by Howard and Levin that allegedly reflect an intent to insure Zone Cabs. Howard testified he sought whatever coverage was legally required to operate his business. Combining this statement with testimony from a PUC employee that the PUC required insurers to cover every party listed on the

-16-

operating tariff, Plaintiffs allege that Howard, in seeking legally necessary insurance and complying with the PUC filing requirement, intended to insure Zone Cabs because the PUC would have required him to do so.

This argument is unpersuasive for several reasons. First, the record contains no suggestion Howard believed the law obligated him to procure insurance for Zone Cabs' taxis even after the PUC rejected the initial Form E. Second, Howard testified the revised Form E was not intended to expand the scope of coverage to include Zone Cabs' taxis. Whatever the PUC required, there is simply no basis in the record for inferring that Howard in fact intended the Hartford policy to insure Zone Cabs' taxis.

Levin's testimony confirms this view. Although he testified he sought "the broadest scope of coverage possible for my clients" and included the notation "01" for liability in the policy to ensure his client would be covered if it purchased new vehicles and did not notify the insurance provider, he made plain he considered Centennial to be his client and, further, that in seeking the broadest coverage possible he did not intend to provide coverage for Zone Cabs' taxis.

In sum, these statements simply do not indicate an intent that the policy cover Zone Cabs nor make the contracting parties' contrary intent equivocal. Plaintiffs' contention Centennial intended to insure Zone Cabs' taxis lacks merit.

3.

Plaintiffs next challenge the district court's determination that any coverage provided to Zone Cabs in the revised policy resulted from a mistake on the part of Hartford. Despite the testimony from Hartford's representative Mullahy and the insurance agent Levin that Hartford did not intend to insure Zone Cabs, Plaintiffs allege "it strains credibility to its limits to believe that The Hartford did not understand the legal effect of adding a named insured to a policy, and thus made a 'mistake.'" Aplt. Br. at 16, n. 2. We disagree.

First, there is no evidence in the record establishing that Hartford realized at the time it issued the changed policy that the alterations could affect the scope of coverage. Second, Levin, whom Plaintiffs characterize as Hartford's agent, testified that he did not realize changing the named insured on the policy could expand its scope to include Zone Cabs' taxis and that he did not believe Hartford held such a belief. Insofar as an experienced insurance agent failed to recognize the potential effect of altering the policy, we do not find it unreasonable that Hartford made the same mistake, especially where Levin repeatedly assured Hartford that the requested coverage was for limousines, not taxis, and in requesting the changes to the Form E only indicated that the PUC required a name change. Third, the means by which Zone Cabs was added to the policy and the Form E support the district court's finding that Hartford made a mistake. The

name Zone Cabs was included as an additional "doing business as" designation, not an entirely separate insured. Fourth and finally, the fact that Hartford did not seek to increase the premiums charged on the policy when asked to include "dba Zone Cabs, Inc." shows that Hartford did not believe inclusion of the term would expand coverage from Centennial's ten limousines to Zone Cabs' more than 100 taxis.

As such, the district court did not err in finding mutual mistake.

4.

Furthermore, to the extent Plaintiffs assert the district court erred in determining Hartford had shown by "clear and convincing evidence" they were entitled to reformation, as opposed to the "clear and unequivocal evidence" standard contained in Colorado case law, *see Maryland Cas. Co. v. Buckeye Gas Prod. Co.*, 797 P.2d 11, 13 (Colo. 1990), we find this contention without merit. Assuming there is an appreciable difference between these standards of proof, the

evidence before the district court supports reformation under either standard. [5]

## C. Hartford Did Not Ratify Coverage of Zone Cabs

Plaintiffs also opposed reformation on the ground that Hartford effectively ratified the broader insurance agreement, including the PIP benefits and duty to defend contained therein, by settling the Nguyen claim. The district court found this argument unpersuasive for three reasons: (1) Hartford's decision to settle the Nguyen claim was defensive in nature and designed to avoid the possibility of additional litigation exposure; (2) Hartford reserved the right to assert claims and policy defenses when agreeing to participate in the Nguyen settlement; and (3) Hartford did not seek to be reimbursed by Plaintiffs for the $1 million contributed to the settlement. Under Colorado law, though ratification is generally a question of fact, where the facts are uncontested and clearly established, it is a question of law. *See Mountain States Waterbed Distribs., Inc. v. O.N.C. Freight Sys. Corp* .,

---

[5] Plaintiffs make one additional allegation that warrants comment. They assert in their opening brief that comments made by the district court expressing displeasure with the PUC for allowing Zone Cabs and Centennial to operate under the same tariff "are particularly telling" and suggest that the court was focused more on regulatory practices of the PUC than the question of policy coverage. Aplt. Br. at 17. In their reply brief, Plaintiffs continue "[t]he district court's disparagement of the PUC to justify its decision to reform the policy also demonstrates its error." Aplt. R. Br. at 8. Though it is unclear how the district court's statements about PUC operating practices are indicative of any error regarding the question of contractual intent, to the extent Plaintiffs allege the court based its decision on displeasure with the PUC, we note the court explicitly stated in the context of these remarks, "we're not here to try the PUC. . . . The case here is mutual mistake."

614 P.2d 906, 907 (Colo. Ct. App. 1980); *see also In re King Resources Co.*, 614 F.2d 703, 705 (10th Cir. 1980). Such is the case here and our review is de novo. *See Salve Regina Coll. v. Russell*, 499 U.S. 225, 231 (1991).

1.

On appeal, Plaintiffs rely on an unpublished Colorado Court of Appeals case to argue in their opening brief that "reformation is not available to a party that has availed itself of the benefit of the contract. A party to a contract cannot both affirm and disaffirm a contract or affirm it in part and disaffirm it in part. *Kelly v. Silver State Savings and Loan Ass'n.*, 534 P.2d 326, 328 (Colo. Ct. App. 1975); *Joyce v. Davis*, 539 F.2d 1262, 1266 (10th Cir. 1976)." Aplt. Br. at 19. In *Kelly*, the court found the doctrine of ratification can defeat a mutual mistake reformation claim where the party seeking reformation accepts a benefit under the contract with knowledge of the alleged mistake. *See* 534 P.2d at 327–28; *see also* Restatement (Second) of Contracts § 380(2) (1981) ("The power of a party to avoid a contract for mistake . . . is lost if after he knows or has reason to know of the mistake . . . he manifests to the other party his intention to affirm it or acts with respect to anything that he has received in a manner inconsistent with disaffirmance."); *id.* at cmt. a ("A party who has the power of avoidance may lose it by action that manifests a willingness to go on with the contract. Such action is known as 'affirmance' and has the effect of ratifying the contract."); *id.* at cmt. b

("A party may manifest his intention to affirm by words or other conduct, including the exercise of dominion over what he has received in a manner inconsistent with avoidance of the contract. . . . [H]is power of avoidance for . . . mistake [is not] lost until he . . . knows or ought to know of a non-fraudulent . . . mistake.").

Based on *Kelly*, Plaintiffs contend Hartford ratified or affirmed the validity of the insurance agreement, including the PIP benefits and the duty to defend, in three ways: (1) paying to Nguyen the policy's liability limit of $1 million in exchange for protection from "extra-contractual liability," (2) settling another unrelated liability claim under the policy, and (3) including Zone Cabs as a named insured because without Zone Cabs "the PUC would not have approved the Form E and the Hartford would not have been paid a premium for a non-complying policy." Aplt. R. Br. at 10. Plaintiffs conclude that Hartford therefore availed itself of a benefit of the insurance policy and is precluded from seeking reformation.

2.

As to Plaintiffs' first argument, we cannot conclude that payment of $1 million to Nguyen in exchange for protection from "extra-contractual liability" as part of the settlement agreement is a benefit to Hartford under the insurance agreement and therefore supports ratification of the insurance agreement under

-22-

Colorado law. The benefit, if any, flows from the settlement agreement, not the insurance agreement. In fact, Hartford has paid $1 million it was not obligated to pay under the district court's view of the facts. In any event, while the settlement may have reduced some of Hartford's hypothetical exposure to Nguyen or others (exposure that Plaintiffs apparently sought to exploit), we decline to infer from the mere fact of settlement that Hartford manifested an intention to affirm the insurance agreement where the settlement itself included a full reservation of rights. *See Nikolai v. Farmers Alliance Mut. Ins. Co.*, 830 P.2d 1070, 1073 (Colo. Ct. App. 1991) (stating an insurer does not ordinarily waive its policy defenses by payment of settlement proceeds to a claimant).[6] As the district court observed, the settlement was a rational response to the unusual circumstance Hartford faced and did not ratify the insurance agreement.

We similarly will not infer an intention to affirm the insurance policy based on Hartford's settlement of another claim against Zone Cabs given the total lack of argument regarding the nature of the settlement in the record.

-----

[6] Plaintiffs' attempt to differentiate *Nikolai* by arguing the case only speaks to policy defenses and "reformation is not a defense to coverage, but rather a claim that the coverage itself should be changed" is unpersuasive. Aplt. R. Br. at 10. Even if reformation does not constitute a policy defense, Plaintiffs offer no argument as to why this distinction is relevant and we see none. Under either a theory of reformation or a more typical policy defense such as a policy exclusion, the gist of the matter is the same: the insurer is asserting that the claim does not fall within the scope of coverage intended by the parties.

Nor does acceptance of the premiums paid by Centennial or approval by the PUC of the revised Form E constitute ratification of the insurance agreement to include coverage for Zone Cabs. Though the premiums were a financial benefit to Hartford, and the PUC approval may have represented an indirect benefit (by allowing Hartford to meet the tariff requirements), Hartford neither accepted the premiums nor sought PUC approval with knowledge of the mistake, *i.e.*, that the policy as written could be read to include coverage of Zone Cabs' more than 100 taxis. We thus also reject Plaintiffs' third argument.

In sum, the district court correctly determined Hartford did not ratify or affirm the contract to include coverage for Zone Cabs. We therefore conclude the district court properly found that Hartford could seek reformation of the policy under Colorado law.

## II. Summary Judgment

### A. Standard of Review

We review the district court's grant of summary judgment, including its interpretation of state law, de novo, applying the same standards used by the district court. *See Combs v. PriceWaterhouse Coopers LLP*, 382 F.3d 1196, 1199 (10th Cir. 2004); *Exxon Corp. v. Gann*, 21 F.3d 1002, 1007 (10th Cir. 1994). Summary judgment is appropriate if the evidence shows that there is no genuine

issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. *See Combs*, 382 F.3d at 1199.

The summary judgment issues before us are unusual given the procedural posture of this case. Specifically, the evidence entered into the record between the grant of partial summary judgment and the bench trial, as well as the district court's findings after the bench trial, bear directly on the claims disposed of at summary judgment. Given that we have affirmed the district court's reformation order and that affirmation effectively precludes Plaintiffs from recovering on the statutory claims discussed below, we need not limit our review of the summary judgment claims to the record before the district court at the time it made those determinations. Rather, our review includes evidence introduced during the bench trial as well. *See Exxon*, 21 F.3d at 1007 (in reviewing grant of summary judgment, we are not constrained by the conclusions of the district court but rather may affirm or deny on any grounds adequately presented to the district court); *Sanpete Water Conserv. Dist. v. Carbon Water Conserv. Dist.*, 226 F.3d 1170, 1176–78 (10th Cir. 2000) (disagreeing with grounds on which district court granted summary judgment on breach of contract claim but affirming grant nonetheless because evidence and findings of court at subsequent bench trial on

related issue effectively ensured plaintiffs would not prevail on contract claim if case remanded).[7]

## B. The Colorado Consumer Protection Act Claim

Plaintiffs argue the district court erred in granting summary judgment to Hartford on Plaintiffs' claim under the CCPA, Colo. Rev. Stat. § 6-1-101, *et seq*. Under the CCPA, a plaintiff must establish five elements to be eligible for relief: (1) conduct by the defendant that constituted a deceptive trade practice, *see id.* § 6-1-105; (2) the deceptive practice occurred in the course of the defendant's business, vocation or occupation; (3) the practice affected the public interest; (4) the plaintiff suffered an injury to a legally protected interest; and (5) the defendant's actions in violation of the CCPA caused the plaintiff's injury. *See Hall v. Walter*, 969 P.2d 224, 234–35 (Colo. 1998). Accepting Plaintiffs' statement of facts, the district court concluded Plaintiffs had failed to show that

---

[7] We further emphasize that such an approach does not run afoul of the rule that parties cannot on appeal seek to have a grant of summary judgment affirmed or reversed based on facts not presented to the district court. *See, e.g.*, *VBF, Inc. v. Chubb Group of Ins. Cos.*, 263 F.3d 1226, 1229 n.2 (10th Cir. 2001). The evidence on appeal comes from the district court record and is not being introduced for the first time on appeal.

Hartford engaged in an unfair or deceptive act or practice that affected the public interest.

Though the parties dedicate substantial briefing to the question of whether Hartford's actions in question here sufficiently affected the public interest to warrant relief, we find it unnecessary to reach this question because, after review of the record including that developed during the bench trial, we agree with the district court that Hartford did not engage in a deceptive trade practice. On appeal, Plaintiffs argue Hartford's deceptive trade practice consisted of submitting the revised Form E to the PUC and generating an insurance policy, both of which included Zone Cabs as a named insured, when Hartford did not intend to insure Zone Cabs.

In their underlying complaint, Plaintiffs alleged this conduct violated three deceptive trade practices listed in Colo. Rev. Stat. § 6-1-105, specifically subsections (1)(b), (1)(c) and (1)(e).[8] Each of these subsections require that the

---

[8] The relevant portions of § 6-1-105 provide that a person engages in a deceptive trade practice when the person: "[k]nowingly makes a false representation as to the source, sponsorship, approval, or certification of goods, services, or property," *id.* § 6-1-105(1)(b); "[k]nowingly makes a false representation as to affiliation, connection, or association with or certification by another," *id.* § 6-1-105(1)(c); and "[k]nowingly makes a false representation as to the characteristics, ingredients, uses, benefits, alterations, or quantities of goods, food, services, or property or a false representation as to the sponsorship, approval, status, affiliation, or connection of a person therewith," *id.* § 6-1-105(1)(e).

purported wrongdoer knowingly make a false representation. Here, while the record establishes Hartford did not intend to insure Zone Cabs, it also makes clear Hartford did not knowingly attempt to deceive the public. Further, there is no basis to infer from the record that Zone Cabs, Cabs or any member of the public were actually deceived by the revised Form E.

Because the record before us establishes Hartford did not knowingly make a false representation, we need not consider whether the district court properly granted summary judgment based on the record before it at that time. To do otherwise, and remand based on any errors in interpreting the record at the time of the grant of summary judgment, "we would force the trial court to repeat that thorough evidence-gathering and decision-making process" it engaged in during the bench trial to reassess the extent of Hartford's knowledge at the time it revised the insurance policy. *Sanpete*, 226 F.3d at 1176. Such an approach would be "contrary to the doctrine of judicial economy" and "fulfill no other purpose than further delay of a resolution of this dispute." *Id.* Thus, we conclude on this record that Hartford did not engage in a deceptive trade practice.

The district court properly granted summary judgment on this issue.

### C. The Colorado No-Fault Act Claim

At the time of the accident, Colorado's No-Fault Act, Colo. Rev. Stat. § 10-4-708(1.8) (repealed 2003), required that "in the event of the willful and wanton

failure of the insurer to pay [personal injury protection or no-fault] benefits when due, the insurer shall pay to the insured, in addition to any other amounts due to the insured under this subsection (1.8), an amount which is three times the amount of unpaid benefits recovered in the proceeding." Plaintiffs argued before the district court that they were entitled to treble damages on no-fault payments made to Nguyen. The court rejected this claim on summary judgment after finding that Plaintiffs were not an "injured party" under the No-Fault Act based on *Mid-Century Ins. Co. v. Travelers Indem. Co.*, 982 P.2d 310 (Colo. 1999).

On appeal, Plaintiffs argue the district court erred in finding their claims barred by *Mid-Century* because that case is factually distinct from the circumstances here. We need not address this argument, however, because the grant of summary judgment is supportable on other grounds. *See Exxon*, 21 F.3d at 1007. A prerequisite for recovery under the former No-Fault Act is that the party allegedly obligated to make no-fault payments in fact be legally required to do so. The statute speaks in terms of payments required to be made by an insurer, which presupposes the alleged insurer is an insurer in fact. Here, as reformation of the insurance policy makes clear, Hartford was not legally obligated to provide insurance for Zone Cabs' taxis. Therefore, Hartford cannot be liable for no-fault payments due Nguyen as a result of her injuries sustained when struck by a Zone

Cabs taxi.  Plaintiffs' claim for treble damages under the former No-Fault Act is without merit and the grant of summary judgment is affirmed.

## Conclusion

The district court's order reforming the insurance agreement and grant of partial summary judgment are affirmed.

Entered for the Court

Timothy M. Tymkovich
Circuit Judge